# Harris *v.* The State.

*Manslaughter.*

(Decided April 10, 1913. Rehearing denied May 8, 1913. 62 South. 477.)

1. *Homicide; Evidence; Footprints.*—Where the body of deceased was found near a tree shortly after the killing, a witness who visited the scene not long thereafter could testify that footprints were found about the tree, in connection with the other evidence surrounding the killing, notwithstanding the further proof that a num-

[Harris v. The State.]

ber of other persons had been about the tree before the witness got there; the weight of the evidence, when taken in connection with these facts, being for the jury.

2. *Same; Insanity.*—Where the defense was insanity, superinduced by receipt of information by defendant of the deceased's misconduct towards defendant's wife, during his absence from home, evidence concerning deceased's movements preceding and following his entry into defendant's residence on the occasion of the alleged misconduct, was irrelevant, in the absence of any evidence or claim that defendant was subjected to a mentally disturbing influence other than by his receipt of information as to what had occurred at his home during his absence at the time of such claimed misconduct.

3. *Same; Mental Capacity.*—Witnesses who are familiar with a person whose sanity is in question, and who are shown to have had opportunity to observe the appearance and demeanor before and after the occurrence claimed to have affected his mental condition, may properly give their opinion as to the sanity or insanity of such person.

4. *Same; Punishment; Instruction.*—Where the defendant was found guilty of manslaughter and sentenced to the penitentiary for five years, he was not harmed by the error of the court in instructing the jury that they might for that crime assess any term between two and ten years.

5. *Same; Instruction.*—A charge asserting that if the jury were reasonably satisfied from all the evidence that at the time of the killing defendant was under duress of such mental disease that he could not resist the impulse to shoot deceased, and that the shooting was related to the mental disease closely in cause and effect, then they should acquit him on his plea of not guilty by reason of insanity, was objectionable for failure to hypothesize that the shooting was a result or effect to be attributed to defendant's mental unsoundness as its sole cause, besides using an expression which did not clearly convey any meaning.

6. *Charge of Court; Exceptions.*—Where an exception to a part of the oral charge did not point out a portion which was objectionable, but was so reserved as to include portions properly given, it was not subject to review.

7. *Same; Construction.*—The oral charge given must be construed as a whole.

8. *Same; Covered by Those Given.*—It was not error to refuse instructions substantially covered by written instructions given.

9. *Same; Reasonable Doubt.*—Reasonable doubt is not the same as probability of innocence, as there may be a reasonable doubt of guilt, though a preponderance of the evidence may not show a probability of innocence.

10. *Appeal and Error; Harmless Error; Evidence.*—The sustaining of an objection to a question as to whether a defendant talked and acted like a rational man, is cured by testimony subsequently admitted fully describing defendant's appearance and demeanor after the trouble which it was claimed had unbalanced his mind.

11. *Evidence; Res Gestae.*—Where defendant testified that it was about an hour and a half after he left home to go for the cows that he met deceased at a spring near which the killing occurred, what he was doing before he reached the spring, was not admissible as of the res gestae or otherwise.

12. *Same; Undisclosed Motive.*—Under the rule that one may not testify to his undisclosed motive, a defendant may not state what was his motive in going to a spring where he killed deceased.

13. *Same; Hearsay.*—Whether or not a witness' attention had been called to the existence or non existence of defendant's sanity at a time when witness said that he had been talking to defendant, was capable of being answered by what had been said to witness by another or others with reference to defendant's mental condition, and was, therefore, objectionable as hearsay.

APPEAL from Franklin Circuit Court.

Heard before Hon. C. P. ALMON.

Lucien Harris was convicted of manslaughter in the first degree, and he appeals. Affirmed.

The facts sufficiently appear from the opinion. The following charges were refused defendant:

"(3) If you are reasonably satisfied from all the evidence in this case that Lucien Harris killed Zophus Jackson in self-defense, as I have defined self-defense to you in my charge to you, it is your duty to acquit."

"(6) If you are reasonably satisfied from all the evidence in this case that at the time of the killing Lucien Harris was under duress of such mental disease as that he could not resist the impulse to shoot Zophus Jackson, and that the shooting of Jackson was related to the mental disease closely in cause and effect, then you should acquit him on his plea of not guilty by reason of insanity.

"(7) If there is a probability of the innocence of defendant from all the evidence, then you should acquit him."

WILLIAMS & JONES, and ALMON, ANDREWS & PEACH, for appellant. The court erred in allowing evidence of footprints, as there was no evidence connecting defend-

ant therewith. The court erred in the questions propounded touching defendant's insanity.—*Howard v. State,* 55 South. 225; *Parrish v. State,* 139 Ala. 16; *Thornton v. State,* 113 Ala. 43; *Gardner v. State,* 96 Ala. 12. The court was in error in not permitting defendant to bring out all the facts which came to his knowledge on the night of the mistreatment of his wife causing the insanity.—*State v. Odom,* 56 South. 913; *Howard v. State, supra; Milford v. State,* 2 Ala. App. 104; *Braham v. State,* 143 Ala. 28; *Parrish v. State, supra; Cauley v. State,* 133 Ala. 128. The court was in error in refusing to permit defendant to show what he went to the spring for, and what he was doing there when he met deceased, and the killing occurred.—*Parsons v. State,* 81 Ala. 577; *Parrish v. State, supra; Howard v. State, supra.* Exception 1 to the oral charge should have been sustained.—*Robinson v. State,* 108 Ala. 14; *Cross v. State,* 63 Ala. 40. Exceptions 11 and 12 should have been sustained.—*Parrish v. State, supra; Maxwell v. State,* 89 Ala. 150; *Parsons v. State, supra.* A probability of defendant's innocence is a just foundation for a reasonable doubt, and authorizes an acquittal. —*Gregg v. State,* 106 Ala. 44; *Karr v. State,* 106 Ala. 1; *Whittaker v. State,* 106 Ala. 30; *Pickens v. State,* 115 Ala. 142; *Winslow v. State,* 76 Ala. 42; *Shaw v. State,* 28 South. 392.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State. The issue was sanity or insanity vel non, and the question should have been so framed as to show whether in the opinion of the witness defendant was sane or insane. The question of rationality was not involved.—*Milford v. State,* 2 Ala. App. 102; *Ward v. State,* 96 Ala. 100; *Dean v. State,* 105 Ala. 21; *Parrish v. State,* 139 Ala. 16; *Bra-*

[Harris v. The State.]

*ham v. State,* 143 Ala. 28. The questions propounded
to defendant to which objections were sustained called
for undisclosed motive or evidence of self-serving
declarations.—*Spivey v. State,* 26 Ala. 90; *Taylor v.
State,* 42 Ala. 529; *Stewart v. State,* 63 Ala. 199; *Bon-
ham v. State,* 65 Ala. 456; *Billingsley v. State,* 68 Ala.
486; *Ferguson v. State,* 134 Ala. 63. The method of
reserving exception to the oral charge presents nothing
for review as the objectionable portions were not point-
ed out. Charges 6, 8, and 11 were properly refused.—
*Parrish v. State, supra.* Charge 12 was properly re-
fused.—*Jones v. State,* 13 Ala. 153. Counsel discuss
other refused charges, but without citation of author-
ity.

WALKER, P. J.—The case was tried on issues joined
on the defendant's pleas of "not guilty" and "not guilty
by reason of insanity."

So far as the record discloses, there was no eye wit-
ness of the killing; but there was evidence of an admis-
sion by the defendant that he killed the deceased by
shooting him with buckshot, and also evidence as to
the location of the body of the deceased, as it was found
shortly after the shooting was heard by a witness who
was some distance away, as to some gun wadding being
found near a tree about 10 steps distant from the body
of the deceased, and as to the finding where some twigs
had been shot between that tree and where the body
was lying. In connection with this evidence it was
permissible to prove by a witness, who visited the scene
not long after the killing that footprints were found
about the tree above referred to. This circumstance
was such a one as might, especially in connection with
other circumstances deposed to, shed light on the rela-
tive positions of the defendant and the deceased at the

time of the shooting. It was a question for the jury whether the probative value of this evidence was impaired or destroyed by the fact, subsequently brought out, that a number of other persons had been about the scene of the shooting before the witness got there.

The appellant cannot complain of the action of the court in sustaining the objection to the question to the witness Henry Harris as to whether the defendant talked and acted like a rational man, as the question was practically answered by the admitted testimony of the witness, describing the appearance and demeanor of the defendant after he experienced the trouble which is claimed to have unbalanced his mind, and which included an explicit statement of the opinion of the witness that the defendant was insane. It is equally plain that the effect of sustaining objections to questions asked the witness Marion Mason was not to deprive the defendant of any testimony to which he was entitled. The witness was permitted to describe at length the conduct of the defendant and the change that came over him, and was afforded an opportunity to express an opinion as to whether he was sane or insane.

The plea of not guilty by reason of insanity was sought to be supported by evidence of the defendant's becoming mentally unbalanced following, and, as it was claimed, in consequence of his receipt of information of gross misconduct of the deceased towards the wife of the defendant while the latter was absent from his home, which was the scene of the misconduct reported to him. The utmost latitude was accorded to the defendant in permitting the introduction of testimony as to what was said to him after his return to his home by his wife and other inmates of the house in reference to the misbehavior of the deceased. Exceptions were reserved to the action of the court in sustaining objec-

tions to questions which sought to elicit testimony as to the movements of the deceased preceding and following his entry into the defendant's residence on the occasion of the alleged misbehavior. There is nothing in the evidence to indicate that there could have been any basis for a claim that the defendant was subjected to a mentally disturbing influence otherwise than by his receipt of information as to what had occurred in his home during his absence; and the court properly declined to permit the introduction of evidence as to what deceased did elsewhere before or after the occurrence in the defendant's residence. The matters sought to be elicited by the questions referred to were without any relevancy or pertinency to any issue in the case, either the one raised by the plea of not guilty, or the one raised by the plea of not guilty by reason of insanity. They could shed no light on the inquiry as to the defendant's guilt or innocence if he was mentally responsible, or on the inquiry as to his sanity or insanity.

The defendant, as a witness in his own behalf, testified that it was about an hour and a half after he left his home to go after his cows that he met the deceased at the spring near which the killing occurred. What he was doing when he reached the spring was not part of the res gestæ, and he was not entitled to testify as to his movements during that time.—*Ferguson v. State,* 134 Ala. 63, 32 South. 760, 92 Am. St. Rep. 17. Plainly it was not permissible for him to state what was his undisclosed motive in going to the spring.

Certainly it cannot be said that it is clearly made to appear that the court was in error in overruling the general objections made to the questions to the witnesses Miller and Simms as to whether the defendant was sane or insane. In each of these instances the question objected to had been preceded by testimony

tending to show that the witness was familiar with the person whose sanity was in question, and had had opportunities of observing his appearance and demeanor before and after the occurrence which was claimed to have affected his mental condition.—*Braham v. State,* 143 Ala. 28, 41, 38 South. 919.

On the cross-examination of the witness Simms, the defendant's counsel asked him if his attention had been called to the existence or non-existence of the defendant's sanity at the time the witness said he had talked to the defendant. The question was such that it might have been answered by the witness referring to or mentioning what may have been said to him by another or others in reference to the defendant's mental condition. This would have been mere hearsay. It is not error to sustain an objection to a question which may be answered as well by illegal as by legal testimony.—*Beall Brothers v. Johnstone & Hammond,* 140 Ala. 339, 37 South. 297.

An exception was reserved to a part of the court's oral charge which contained an instruction as to the form of the verdict to be rendered by the jury in the event of their finding the defendant guilty of manslaughter in the first degree, which was followed by a remark of the court that the number of years' imprisonment in the penitentiary in that event "to be determined by you at anywhere between two and ten years." Nothing could be said against the correctness of that part of this instruction which has reference to the form of the verdict suggested by the court in the event mentioned, and it is not claimed that there was any error in this respect. The only proposition stated in the part of the charge which was excepted to of which complaint is made is the one in reference to the period of imprisonment to be imposed on a conviction of man-

slaughter in the first degree. The exception was not so reserved as to direct the court's attention to this part of the instruction. It did not separate the bad from the good. The exception cannot avail the appellant, as all of the part of the charge which was excepted to was not faulty.—*Marbury Lumber Co. v. Lamont,* 169 Ala. 33, 53 South. 773; *Alabama Steel & Wire Co. v. Griffin, Adm'r,* 149 Ala. 423, 42 South. 1034; *Simpson v. State,* 111 Ala. 6, 20 South. 572.

It may be remarked that it does not seem that the verdict was affected by the mistake of the court in stating the lowest permissible punishment for manslaughter in the first degree, as the defendant's punishment was by the verdict fixed at five years' imprisonment in the penitentiary, thus making it apparent that it was not the purpose of the jury to impose the least punishment allowed for the offense of which the defendant was found guilty.

The part of the oral charge dealing with the elements of self-defense to which an exception was reserved is to be considered in its connection with the other parts of that charge which dealt with the same subject. When the oral instructions of the court as to this feature of the case are looked at as a whole, it is not found that they misstated the law in any particular.

When the parts of the court's oral charge dealing with the issues raised by the pleas of not guilty and not guilty by reason of insanity, which were isolated by exceptions reserved to them, are considered in connection with other oral instructions as to the duties of the jury in dealing with the separate issues thus raised, it is apparent that the oral charge as a whole is not subject to criticism, on the ground that it confused the two issues, or improperly instructed the jury in ref-

erence to its duty in considering those issues.—*Parrish v. State,* 139 Ala. 16, 50, 36 South. 1012.

In view of the instructions embodied in charge 42, given at the request of the defendant, it is apparent that he could not have been prejudiced by the court's refusal to give charge 3, requested by him, conceding that the latter charge was one that could properly have been given.

In addition to the fault to be found in charge 6, requested by the defendant, because of its use of an expression which does not clearly convey any meaning, it was objectionable because of its failure to hypothesize that the shooting was a result or effect to be attributed to the defendant's mental unsoundness as its sole cause. —*Parsons v. State,* 81 Ala. 577, 2 South. 854, 60 Am. Rep. 193.

In written charge 40, given at the instance of the defendant, he had the benefit of the proposition stated in charge 7, requested by him, and he cannot complain of the refusal of the court to give the latter charge. The rulings on the charges presented for review in the cases of *Croft v. State,* 95 Ala. 3, 10 South. 517; *Stewart v. State,* 133 Ala. 105, 31 South. 944, and *Nordan v. State,* 143 Ala. 13, 39 South. 406, and what was said in the opinion in the former case makes it plain that a distinction is to be recognized between a reasonable doubt of the defendant's guilt and a probability of his innocence, and that the two things are not to be regarded as equivalents. There may be a reasonable doubt of the defendant's guilt, though a probability of his innocence is not shown by a preponderance of the evidence in his favor.—*Bain v. State,* 74 Ala. 38. Following the reasoning of the opinions in the four cases referred to, we hold that charge D, requested by the defendant, was properly refused, though it is substantially a quotation

of an expression used in the opinion in the case of *Bones v. State,* 117 Ala. 138, 23 South. 138, in ruling upon charges of a different import.

What has been said above disposes of the rulings which have been made the subjects of criticism in the two briefs submitted by the counsel for the appellant. The record presents for review a multitude of other rulings throughout the trial; exceptions having been reserved apparently with little regard to the nature of the questions raised. We have examined those rulings, and find in neither of them any ground of reversal.

Affirmed.