[Brown v. The State.]

# Brown v. The State.

## *Murder.*

(Decided December 17, 1914.   66 South. 829.)

1. *Trial; Objection to Evidence.*—The objection to a question "did you hear any noise made by the gun when defendant came out as if he were unbreaching it?" as calling for a conclusion was removed by the answer of the witness that he heard the gun click.

2. *Homicide; Errors; Lying in Wait.*—Where the evidence showed that defendant came to his store armed with a gun, and that he knew that deceased was in the habit of passing the store twice daily, and that on seeing decedent through the door of the store he unbreached his gun and proceeded out of the door into the street to meet deceased, where he killed him, the testimony of a witness that he heard accused say that he was waiting for a person, and would stay at the store for a while, and the testimony of another witness that as accused came out of the store he heard a gun click were admissible.

3. *Same.*—Where defendant came to the store armed and on seeing deceased through the door of the store, unbreached his gun and went immediately out to the street to meet deceased, where he killed him, testimony of the proprietor of the store that defendant, at the place where he sat before leaving the store, could see through the screen door to the street, was admissible as a statement of fact observable by the witness.

4. *Same; Res Gestae.*—Where the state did not attempt to show flight testimony of an officer as to what defendant was doing at the time of the arrest was not a part of the res gestæ, and was properly excluded.

5. *Same; Insanity as Defense; Evidence.*—Where defendant had not introduced any evidence of his insanity, the exclusion of evidence that before the commission of the crime, defendant had lost his home, was immaterial and properly excluded.

6. *Same.*—The physician who examined accused while in jail awaiting trial may testify as to the sanity as against the objection that it related to the mind of accused after the commission of the offense.

7. *Appeal and Error; Review; Matters Not Shown.*—Where the instructions refused to defendant are not shown in the bill of exceptions the action of the court in refusing them is not reviewable on appeal.

8. *Same; Harmless Error; Evidence.*—Error in permitting the state to prove where defendant obtained liquor while in a store in wait for deceased, was not prejudicial error.

[Brown v. The State.]

9. *Same; Curing Error.*—If there was any error in excluding testimony of a witness, it was cured where it was subsequently admitted on his further examination.

10. *Evidence; Absent Witness; Subsequent Trial.*—Where certain persons testified on a prior trial, and were shown to have left the state, taking with them their property, and prior to their leaving had lived in a rented house and that the sheriff had searched for them and could not find them, their testimony could be proved on a subsequent trial.

11. *Same.*—Where a witness had been examined and cross-examined on a prior trial, or on opportunity for cross-examination had been afforded, the testimony of such witness may be proved on a subsequent trial upon a showing that the witness is dead or has become insane, or has gone beyond the jurisdiction of the state either permanently or for such an indefinite length of time that his return is conjectural.

12. *Evidence; Uncommunicated Motive.*—A defendant cannot testify to his uncommunicated motive or intention.

13. *Witnesses; Contradiction; Evidence.*—Where defendant had testified that at the time he left the store he did not see deceased, it was competent to contradict this statement to show that defendant came to the store armed with a gun, that he knew that deceased was in the habit of passing there twice daily, and that accused could, from the place where he sat in the store see through the screen door to the street.

14. *Same; Competency; Source of Knowledge.*—A witness familiar with the physical conditions of a place at a particular time, gained from general observation and familiarity, is competent to testify to the conditions.

APPEAL from Mobile City Court.

Heard before Hon. O. J. SEMMES.

William Brown was convicted of murder in the second degree, and he appeals. Affirmed.

See also 9 Ala. App. 15; 64 South. 170.

TOMPKINS & KIRKPATRICK, for appellant. The court was in error in permitting it to be shown that one could see through that door from where Brown was sitting one coming along the streets.—*Miller's Case,* 107 Ala. 40; *Evans' Case,* 109 Ala. 11; *A. G. S. v. Burgess,* 114 Ala. 587. A sufficient predicate was not laid authorizing the admission in evidence of the testimony of the witnesses given on the first trial.—*Harris v. State,* 73 Ala. 495; *Souths' Case,* 86 Ala. 617; *Perry v. State,* 87

Ala. 30; *Mitchell v. State,* 114 Ala. 4. Counsel discuss other assignments of error relative to evidence, and charges refused, but without further citation of authority.

R. C. BRICKELL, Attorney General, and T. H. SEAY, Assistant Attorney General, for the State. The ques tions objected to and which were allowed, were compe tent in two aspects of the case.—*Tesney v. State,* 77 Ala. 33. There was no error in the action of the court relative to the insanity evidence.—*Odom v. State,* 172 Ala. 383; *Parrish v. State,* 139 Ala. 16. The evidence of the two witnesses given on the former trial was properly admitted on the showing made.—*Lucas v. State,* 96 Ala. 51; *Pruett v. State,* 92 Ala. 41.

THOMAS, J.—Appellant was convicted of murder in the second degree. He pleaded to the charge "not guilty" and "not guilty by reason of insanity," and on the trial reserved numerous exceptions to the action of the trial court relating to the admission and exclusion of evidence. While all of them have been severally examined and found to be without merit, we deem it unnecessary to discuss any of them, except those that appellant's able counsel have considered of sufficient importance to urge upon us in their briefs and argument.

The first of these is predicated upon the refusal of the court to sustain an objection to a question propounded by the state to its witness Day, who was present at and witnessed the commission of the crime. He, at the time of, and just before, the shooting, was sitting in front of the shop or store out of which the defendant came with a shotgun in his hands and approached deceased, who was coming down the street, and shot him. The witness was asked by the solicitor: "Did you hear any noise made by the gun when he [defendnat] came out, as if he

were breaking it or unbreaching it?" Conceding, for purposes here, that the last part of the question called for, as contended by the appellant, a conclusion of the witness, the answer, which was that witness "heard the gun click," was entirely unobjectionable on this score, and was not objected to. It stated, too, a material fact tending to show a preparation for the shooting before deceased ever saw defendant.

The solicitor asked the state's witness Allman, out of whose store or shop defendant so came with the gun at the time of the shooting, if he (witness) had heard the defendant say anything that morning, when defendant came there with the gun, "about looking for anybody." The witness answered that he heard defendant then say: "I am waiting for a fellow. I am going to stay with you awhile." These answers were legitimate evidence, tending to show, in connection with the other evidence for the state, that the defendant had armed himself and had come to the shop or store in question (which, it appears, he knew the deceased was in the habit of passing twice daily) for the purpose of lying in wait for him as he came by, and that, on the occasion of the killing, he, upon seeing deceased through the door of the store or shop in which defendant was so waiting, unbreached his gun (probably to assure himself that it was loaded or to reload it) and immediately proceeded out of the door to the street to meet deceased, where he killed him.

Nor was it improper for the witness Allman, the said proprietor or owner of the store or shop, who was seated therein by the side of, and about three feet from, the defendant at the time deceased came down the street, to say that one could see through the screen door to the street from the place where defendant was sitting. The evidence disclosed that this was not the statement of a mere opinion of the witness, but of a fact observed by

the witness, who at some time, whether before or after the tragedy, it does not appear, had occupied the same seat occupied by defendant, and had observed and remembered that he himself, sitting there, could see out into the street.—*Key v. State*, 8 Ala. App. 5, 62 South. 335.

The evidence was material, as tending to afford, in connection with the other evidence offered by the state, basis for an inference that defendant, before getting up from his seat and taking his gun and going out into the street, saw deceased coming down the street, which defendant denied that he did.

The state drew out, without objection, the fact that, during the time that defendant was at said witness Allman's shop or store with his gun, defendant took several drinks, and that each time he did so he sent to the bar for them, and did not himself go after them. Then the state was permitted, over objection, to ask the witness, who had testified to these facts: "Where did [defendant] Brown send and get those beers?" The witness answered that it was at "Eldridge's saloon." Assuming that the latter testimony was, as contended by appellant, irrelevant and immaterial, we are not able to understand how the defendant was injured by it.

On the cross-examination of the state's witness Harris (the officer that arrested defendant), the defendant asked him: "What was defendant doing at the time he was arrested?" While we are clearly of opinion that the court committed no error in sustaining the state's objection to this question, as it certainly called for no part of the res gestae, and as there had been no evidence whatever tending to show flight on the part of the defendant, yet it may be said, in passing, that the witness subsequently answered the question, and stated, without objection, that defendant, at the time witness arrested him,

was standing in Eldridge's grocery store, just across the street from the scene of the shooting.

The court committed no error in sustaining the state's objection to the question propounded to defendant by his counsel, asking as to his purpose in going to the shop or store out of which he came just before he did the shooting; since the question called for defendant's uncommunicated motives or intentions.—*Brown v. State,* 7 Ala. App. 26, 61 South. 12; *Lewis' Case,* 96 Ala. 6, 11 South. 259, 38 Am. St. Rep. 75; *Fonville's Case,* 91 Ala. 39, 8 South. 688; *Harris v. State,* 8 Ala. App. 33, 62 South. 477.

The state, in rebuttal of the testimony of the defendant's witness Burton, to the effect that, while down at a certain pond on a named occasion some time before the killing, he saw deceased climb over the back fence of defendant's premises, when defendant was away, and go in the house with the latter's wife, was permitted to prove by the state's witness Stouter, who from his testimony showed a familiarity with the physical conditions existing at the time at the pond and premises mentioned, that, on account of Yupon bushes that were growing between the said pond and defendant's premises, he could not see defendant's back fence from the pond.—*Key v. State,* 8 Ala. App. 2, 62 South. 335. There is no merit, we think, in defendant's contention that this evidence should be condemned as falling within that class that has been condemned by our Supreme Court as experiments in *Tesney v. State,* 77 Ala. 33, and cases cited in the report of that case in Book 48 of West Publishing Company's Reprint. The witness testified to facts within his knowledge, gained, not by experiment, but from general observation and familiarity with the pond and premises in question and the conditions physically that surrounded them, and from the fact that he had occa-

sion to, and had, observed the fact to which he testified The inference is that he had done so before, and not after, the killing.

"Where a witness has been examined in a criminal trial, and cross-examined, or the opportunity afforded for cross-examination,   *   *   *   and the witness dies, or has become insane, or has gone beyond the jurisdiction of the state, permanently, or for such an indefinite time that his return is merely contingent or conjectural, the testimony of such witness may be proven on a subsequent trial."—*Pruitt v. State,* 92 Ala. 43, 9 South. 406.

The predicate laid by the state in this case for the introduction in evidence of the testimony of Pedro and Eliza Shuruki, given on a former trial, sufficiently met the foregoing requirements of the law. The state's witness Garcia testified as to the absence of said witnesses as follows:

"I know Mr. Pedro Shuruki and Mrs. Eliza Shuruki. I don't know exactly when they left the city [Mobile], but I do know that they left. Mr. Shuruki told me that they were going to Florida. They took their baggage and trunks with them. This was three or more months ago, but they never came back."

The evidence for the state further tended to show that the parties were husband and wife, and had been, prior to the time of their leaving, living in the city (Mobile) in a rented house and letting out rooms. Furthermore, the bill of exceptions recites, immediately before setting out the testimony of these witnesses, as follows:

"It was hereupon admitted by defendant that the sheriff had made a search for Pedro and Eliza Shuruki, and that they could not be found in Mobile county."

The predicate for the introduction of their testimony was, upon the whole, amply sufficient.—*Pruitt v. State, supra.*

The court committed no error in sustaining the state's objection to the question propounded by defendant's counsel on cross-examination to the state's witness Weaver as to whether or not defendant had, before the time of the homicide, lost his home; that is, as to whether or not it had been sold under mortgage by a third person prior to the killing; because, even conceding what defendant's counsel contend, that any evidence that defendant had lost his home was material as tending to show a reason or cause for his alleged insanity, yet such evidence was certainly not competent at the time this was offered, since at that time defendant had introduced no evidence whatever tending to show that he was insane.

The testimony of Dr. England, a witness for the state, who, in rebuttal of the defense, testified as to his examination and observation of defendant after the latter was put in jail, and that, in witness' opinion, defendant was not insane, was not objectionable on the ground, as urged by defendant here, that it related to the condition of the defendant's mind after, and not at the time of, the killing. The fact, if it be a fact, that defendant was not insane shortly after the crime certainly affords room for an inference that he was not insane at the time of its commission.

The state's witnesses Calloway and Smith, put up by the state also in rebuttal of the defense, showed by their testimony sufficient acquaintance and association with, and observation of, defendant to qualify them as nonexperts to say that, in their opinion, he was not insane.— *Harris v. State,* 8 Ala. App. 40, 62 South. 477; *Odom v. State,* 172 Ala. 383, 55 South. 820; *Parrish v. State,* 139 Ala. 16, 36 South. 1012. The court consequently committed no error in allowing them to so testify.

The two written charges requested by the defendant and which, it is alleged, were refused by the court do not appear in, or as any part of, the bill of exceptions, and cannot, therefore, be reviewed.

We find no error in the record, and the judgment of conviction is affirmed.

Affirmed.