163 So. 459

## HINGLE v. SIMS.
### 7 Div. 102.

Court of Appeals of Alabama.
Oct. 8, 1935.

A. L. Crumpton, of Ashland, for appellant.

Harrison & Stringer, of Talladega, for appellee.

BRICKEN, Presiding Judge.

This cause when originally filed in this court was entitled Joe Hingle, Appellant v. W. H. Boynton, as guardian of the estate of Clara E. Cruikshank, a person of unsound mind, Appellee. At the next term of this court, the death of said Clara E. Cruikshank was suggested, and the cause was revived in the name of Claudia C. Sims, as executrix of the estate of Clara E. Cruikshank, appellee, as the statute and rules of court provide.

Upon motion of appellant, the "affirmance on certificate," entered in this case on April 16, 1935, is hereby set aside, and the transcript now on file in the case will be considered, without terms, upon the showing made by appellant.

A suit was filed by Clara E. Cruikshank, plaintiff, against Joe Hingle, defendant, for rent claimed to be owing by defendant to plaintiff. The case was tried on its merits, and a judgment was rendered in favor of plaintiff. After the judgment was rendered, a petition was filed by Joe Hingle, the defendant, setting up that Clara E. Cruikshank had executed and delivered to Joe Hingle a written release by the terms of which the judgment was satisfied. After the judgment was rendered, Clara E. Cruikshank, who at the time of the trial was seventy five or eighty years old, was adjudged to be a person of unsound mind, and W. H. Boynton was appointed as her guardian, and W. H. Boynton, as such guardian, was substituted as the representative of Clara E. Cruikshank, and answered the petition asking that the judgment be declared to have been satisfied. The answer of the guardian to the petition set up, among other things, that at the time the release was executed the said Clara E. Cruikshank was a person of unsound mind, and was insane, and was incapable of executing the release. The court heard the evidence in this cause, and denied Hingle's motion or petition to have the judgment declared satisfied. The evidence as to the mental condition of Clara E. Cruikshank consisted of testimony of O. T. Martin, the person with whom she resided. This evidence was offered by W. H. Boynton, as guardian, and the defendant or petitioner Hingle offered no testimony. The controlling question raised upon this appeal is whether or not the court erred in permitting the witness Martin to testify that Clara E. Cruikshank was a person of unsound mind on or about February 20, 1934, the date when the release was executed.

The decisions in this state are uniform to the effect that, upon proper premise, a layman, as a witness, may give his opinion as to the soundness or unsoundness of mind of a person under inquiry; that is to say, of a defendant in a criminal case, or of a party in other legal proceedings. Douglass v. State, 21 Ala. App. 289, 107 So. 791; Kilpatrick v. State, 213 Ala. 358, 104 So. 656; Birchfield v. State, 217 Ala. 225, 115 So. 297; Harris v. State, 8 Ala. App. 33, 62 So. 477; Hembree v. State, 20 Ala. App. 181, 101 So. 221; Guinn v. State, 22 Ala. App. 331, 115 So. 417.

The question of the competency of a witness to testify as to whether a person was of sound or unsound mind rests in the sound judicial discretion of the trial

judge, and the exercise of this discretion will not be revised except for manifest abuse. Hollingsworth et al. v. Miller, 212 Ala. 187, 101 So. 881; Wear v. Wear et al., 200 Ala. 345, 76 So. 111.

The evidence in this case upon the question under discussion was without dispute or conflict. As stated, the appellant offered no evidence in this connection. Appellee, as stated, introduced as a witness Mr. O. T. Martin who testified as follows: "My name is O. T. Martin. I live at 635 Spring Street, Atlanta, Georgia. I know Miss Clara Cruikshank and have known her about seven years this fall. She lives in my house. I knew her on February 20, 1934. At that time and prior to that time she did things that were unusual and out of the ordinary. I know of my own knowledge she could not remember the house number and where she lived. She would go off and I would have to go and bring her back. I had to do that in Birmingham. About five years ago she would eat more than four times a day. Since she broke her hip, three years ago, there were times when we would have to force her to eat in order for her to get enough to eat to keep her up. We would carry her meals to the room and she would hide them under her bed and just any other place she could. She would go down to the cafe and eat sometime and never would pay for what she ate. She would walk out of the cafe and bring the ticket home with her. She would go in cafes and ask for the food that other people left on their plates. I do not know how old she is, but she is seventy-five or eighty years old. After her hip was broken they would bind it up and she would tear it off and was so bad at that time they kept her in the hospital three days and sent her home with a written contract. I saw her do something unusual about the bandage. I helped the doctor bandage it up and he put it in a place where we thought she couldn't tear it off and she would tear it off anyway. During the night she talked practically all the time and took a short nap all of the time. She talked about teaching school and would call her father and mother and sister and tell me that she would see them. She calls on them once in a while now. She talked about teaching school day and night. She would talk like she was talking to a child and tell them to behave and go pick up paper and things like that. There would be no children there. She would talk to the bed and chairs or any-thing else. She does not keep the cover on her at night in cold weather. We have even sewed the cover on the bed to try to keep it on her. She would even pull off all her clothes at night in cold weather. She does not have control of her bowels and kidneys, but they are a little better now. About three years ago she had a bad case of pellagra and her hands broke out and turned brown and it was that way when Mr. Hingle was up there. She paints her face. She just puts it on anywhere on her face and never had it right. She curses a great deal, you cannot say anything to her at all without her getting mad. She does not even know me now, and has not for three months. I would be waiting on her and she would be calling me all the time. She does not remember what she does for three minutes. You could say something to her and go back in two minutes and she would not know it had happened. I did not know her when she was a school teacher."

Here the respondent asked the witness the following question: "Basing your opinion on your acquaintance with her and your observation of her, would you say that she was a person of sound or unsound mind, on February 20, 1934, or about that time?"

The petitioner, defendant in the original judgment, objected to the question and assigned the following several and separate grounds, to wit: It calls for a conclusion of the witness. The witness is not qualified to express such conclusion. The witness has no knowledge of mental diseases.

The court overruled the objection and the petitioner in open court then and there duly reserved an exception. The witness answered: "I would say she is of unsound mind."

From what has been stated, this ruling of the court was so clearly free from error an extended discussion of the question is unnecessary and will not be indulged. The ruling of the court was in strict accord with the numerous decisions above cited, and the insistence that a manifest abuse of the judicial discretion of the trial court appears cannot be sustained.

No error of a reversible nature in any ruling of the court, complained of, appears. It follows that the judgment from which this appeal was taken must be, and is, affirmed.

Affirmed.