259 So.2d 300

**Roy Edward FLOWERS, alias**

v.

**STATE.**

**7 Div. 100.**

Court of Criminal Appeals of Alabama.

March 7, 1972.

Hubert H. Wright, Gadsden, for appellant.

William J. Baxley, Atty. Gen., and Herbert H. Henry, Asst. Atty. Gen., for the State.

TYSON, Judge.

First degree burglary, Code 1940, Title 14, Section 85: Sentence, ninety years.

### I

The appellant made a motion for a change of venue. This was done on the day of trial, November 12, 1970. We excerpt from the record (R 4):

"We feel that it would be impossible for this man to receive a fair and impartial trial. We therefore move for a change of venue, and we would like to offer in support of the motion, this copy of the local newspaper."

Defendant's Exhibit 2 in support of this motion is a motion along the same lines prepared by the defendant himself. The pertinent article appears as follows:

"FOUR BRADFORD ROBBERY SUSPECTS GO ON TRIAL

"Four escapees from a Georgia prison were to go on trial today here in circuit court as suspects in the armed robbery of the John Bradford home August 10.

"In addition to armed robbery, the four are charged with kidnapping and nighttime burglary. On trial are Thomas G. Smith, Columbus, Ohio; Tommy Glenn (sic) Garrison, Nazoo Rt. 2; Barry Everett Haygood, Atlanta; and Roy Edward Flowers, Macon, Ga.

"Around 1:30 a. m. on Aug. 10 four armed bandits overpowered Bradford's security guards, chained and tied up members of the family, along with officers who came to the rescue. Bradford and one bandit exchanged shots, and Bradford was hit in the foot by a bullet.

"The ski-masked robbers ransacked the home of valuable jewelry but left thousands of dollars worth of furs behind in their haste to make a getaway.

"Emory Thomas, a security guard, was taken as a hostage, and the suspects fled in a rental truck parked at the foot of the hill.

"Authorities were alerted and three of the men were captured in running a roadblock on US 431 just south of Boaz. One suspect was hit in the shoulder during a gun battle with arresting officers.

"The fourth gunman who had fallen over a wall outside the Bradford's home, had been left behind."

The breaking and entering occurred August 10, 1970; the trial began some three months later.

Defendant's Exhibit 2, supra, was the only evidence aside from a call for judicial notice of alleged widespread—even national—publicity.

█ However, no proof of bias in the district from which the venire was summoned—in this instance Etowah County—appears in the record before us.

In Mathis v. State, 280 Ala. 16, 189 So.2d 564, we find the following:

"Publicity by the press, radio and television does not necessarily constitute ground for a change of venue. See: Denton v. State, 263 Ala. 311, 314–315, 82 So.2d 406; Campbell v. State, 257 Ala. 322, 324–325, 58 So.2d 623; Littlefield v. State, 36 Ala.App. 507, 510, 63 So.2d 565, cert. den. 258 Ala. 532, 63 So. 2d 573. Whether a motion for a change of venue should be granted is a matter addressed to the sound discretion of the trial court. See: Cobern v. State, 273 Ala. 547, 551, 142 So.2d 869; Collins v. State, 234 Ala. 197, 199, 174 So. 296; Littlefield v. State, supra. From a consideration of the evidence taken on the hearing of the motion, we cannot say that the trial court abused its discretion in denying the motion."

█ Additionally, the movant has the burden to reasonably satisfy the trial court that an impartial jury cannot be had in the circuit court to which the indictment is returnable. Tiner v. State, 271 Ala. 254, 122 So.2d 738; Dannelly v. State, 47 Ala.App. 363, 254 So.2d 434.

Hence, the motion was overruled without error.

## II

The appellant and two of his companions seized Emory Thomas, a security guard as hostage, and fled in a rental truck which had been parked at the foot of the hill.

The three men were captured shortly thereafter at a road block at U.S. 431, just south of Boaz, Alabama.

Record, page 105, shows that the court, counsel for the State and for the appellant, and the appellant retired to the court's chambers for voir dire interrogation as to what occurred at the time of arrest on the theory that at this stage of the pursuit, the appellant having been identified as the driver of the panel truck, evidence of other offenses would be placed before the jury, and during this, we find the following:

"THE COURT: Well, you can clear it up about the truck.

"MR. WRIGHT: We object, if the Court please, to getting into other offenses which this defendant has been charged with, and if he is found guilty in this case, he will be punished in this case for those other offenses, and we object to it.

"THE COURT: Well, I doubt it. There is some law that affects that. You can continue.

"MR. WRIGHT: You are overruling my objection?

"THE COURT: Yes.

"MR. WRIGHT: We except. Judge, I would like an understanding that we have an objection to every question along this line.

"THE COURT: All right.

"MR. WRIGHT: In order to—not to have to object to every question.

"THE COURT: The thing about it is this, Mr. Torbert and Mr. Henslee, he doesn't even have to object, so you had better be careful to ask legal questions. He doesn't have to object, but I will give you a standing objection.

"MR. WRIGHT: All right, sir. And we except.

"(Thereupon the Court and Counsel for the parties and the Defendant re-

turned to the Court and the presence of the Jury, and the taking of testimony proceeded.)

. . . . . .

"Q (By Mr. Torbert—Special Prosecutor) All right, sir, now I believe we got to the point where you had stopped this truck, is that correct?

"A Yes, sir.

"Q And I believe you said that this defendant, that you have identified, leaned out of the—out of this truck on the driver's side, with a gun?

"A Yes, sir.

"Q What did he say?

"MR. WRIGHT: Just a minute. Let me—let me, if I may object to it, I would like to ask him one question on voir dire, please the Court.

"THE COURT: All right.

"MR. WRIGHT: Was the man that leaned out of the driver's window, was he masked?

"THE WITNESS: No, sir.

"MR. WRIGHT: He did not have one on?

"THE WITNESS: No, sir.

"MR. WRIGHT: All right.

"THE WITNESS: He had a mustache at the time.

"MR. WRIGHT: All right.

"(By Mr. Torbert) All right, what— what did he say?

"A Well, the first words he said, I couldn't understand him, and I asked him to repeat it, and at the same time turned a portable spotlight that we have got, on him, shined it up towards him. And he told us that he had a hostage and if we didn't let him go that they would kill him."

Appellant's able counsel argues that this was evidence of another crime not properly admitted in this cause.

We believe the above comes within the rule as enunciated in Tillison v. State, 248 Ala. 199, 27 So.2d 43, as follows:

" . . . The rule is stated in 16 C.J. 576 § 1116; 22 C.J.S. Criminal Law § 667, as follows: 'Ordinarily the acts, conduct, and statements of accused at the time that he surrendered or was arrested, and after he was arrested, are so separated in time, place, or circumstance from the commission of the offense as to lack the spontaneity necessary to make them a part of the res gestae; but they are admissible as part of the res gestae under some circumstances, as where the arrest was made or attempted shortly after the commission of the offense and the acts or statements were done or made while the mind was still acting under the exciting cause of the occurrence.' Brown v. State, 11 Ala.App. 321, 66 So. 829." See also, Lackey v. State, 41 Ala.App. 46, 123 So.2d 186, cert. den. 271 Ala. 699, 123 So.2d 191.

In addition, from Starling v. State, 18 Ala.App. 610, 93 So. 221, we find:

"Besides, this evidence would be admissible in proving flight and a consciousness of guilt. . . ."

Under the foregoing, this evidence was properly admitted.

We have carefully considered the entire record under the requisites of Code 1940, Title 15, Section 389, and conclude that the judgment below is due to be affirmed.

Affirmed.

PRICE, P. J., and ALMON and CATES, JJ., concur.

CATES, Judge (concurring specially as to Part II).

As I read the record after the trial resumed before the jury the defendant did

not object to Mr. Torbert's (special prosecutor) question, "What did he say?" Nor did he move to exclude the answer. The trial judge made no ruling. Therefore there is no reservation of a question of law for us to review.

In McConnell v. State, 43 Ala.App. 146, 182 So.2d 577, we find:

"There was considerable testimony as to defendant's past records of arrest on state and city vagrancy charges. This was improper evidence, Lyons v. State, 32 Ala.App. 44, 21 So.2d 339; Pike v. State, 36 Ala.App. 713, 63 So.2d 606, but its admission was not error in the absence of objection by defendant."

Immediately before the quoted question and answer (from which kidnaping could be inferred), defense counsel made an objection but cited no grounds. Then, without a ruling by the court, he asked—and received —the court's permission to ask one question as to whether the defendant was masked. Yates answered, "No." Then counsel in effect asked whether the defendant's face was otherwise covered. When Yates said that it was not except for a moustache, defense counsel said, "All right."

This reply, "All right," to me connoted that defense counsel then abandoned his objection, if any. Certainly he did not press the trial judge for a ruling.

Thus, I view this question of evidence of other crimes as one first raised on appeal. Aside from the Automatic Appeal Act which is not pertinent to our instant review,[1] we must have a protected record before we can consider a question of law. See Nichols v. State, 267 Ala. 217, 100 So. 2d 750, where Merrill, J., said:

"The defendant complains that many questions propounded by the solicitor on cross-examination of the defendant's witnesses were error. The record reveals

that no objection was interposed to most of the questions of which she complains. Objections to evidence in a criminal prosecution cannot be raised for the first time on appeal, and where no objection is raised in the lower court, there is nothing to review here. Pugh v. State, 247 Ala. 535, 25 So.2d 417."

Perhaps I am construing the record too strictly. Though, I hasten to add that I think I have given it more latitudinarian scrutiny than the decided cases require. After all, the usual rule is to resolve doubts and ambiguities in favor of the trial court.

In this case I see no need to go into the Pandora's box of other crimes, res gestae and the like. I would even have voted to affirm the lower court without opinion.

PRICE, P. J., concurs herein.

---

1. Unless the death penalty is imposed, appellate review is confined to Code 1940, T. 15, § 389 and not liberalized by §

10 of the Automatic Appeal Act. See Echols v. State, 47 Ala.App. 23, 249 So.2d 639.