# McLeroy v. The State.

*Indictment for Murder.*

1. *Indictment; plea in abatement.*—A plea in abatement to an indictment, on the grounds that the grand jury which preferred the indictment was not shown to have been drawn by the county commissioners, sitting as a jury commission, and that the list failed to show that the jury commissioners had taken the oath as prescribed by law, or that the commission had elected one of their members president, or that the jury commission was ever duly organized, or that the jury list was ever made by the majority of the jury commission, is insufficient and demurrable.

2. *Evidence; when objection comes too late.*—In a criminal case, where the defendant does not object to a witness testifying to a conversation until all of it had been brought out, he can not then move to exclude certain parts of it because the entire conversation was not had in his presence.

3. *Conspiracy; liability of each for acts of others.*—When two or more persons combine or conspire to do an unlawful act, or to com-

[McLeroy v. The State.]

mit a criminal offense, each is equally responsible for the act of
the others in furtherance of their common purpose, if he is
present at the time, aiding, encouraging, or ready to assist if
necessary, and if the act done is within the scope of their com-
mon purpose, or is the natural and proximate consequence of
the act intended ; but they are not responsible for an act
prompted by the individual malice of the perpetrator, and it is
a question for the jury whether the act done was within the
scope of the common purpose, or grew out of the individual
malice of the perpetrator.

4. *Pleas and defenses; drunkenness.*—In a criminal prosecution, when
the specific intent is of the essence of the offense charged,
drunkenness, as affecting the mental condition of the accused,
may become a proper subject to be considered by the jury in
deciding the question of intent.

5. *Same; same; homicide.*—On a trial under an indictment for mur-
der, where the evidence shows that the homicide was committed
by another person than the defendant, the theory of the prose-
cution is that the defendant entered into a conspiracy with the
slayer to kill the deceased, and the evidence for the defendant
showed that he was drunk at the time of the killing, charges
requested by the defendant which predicate the defendant's
acquittal upon the hypothesis that he was too drunk at the time
of the murder to aid or abet with the slayer in the commission
of the crime, but which ignores any reference to the existence
of the conspiracy, are properly refused.

6. *Homicide; charge to the jury.*—On a trial under an indictment for
murder, a charge which instructs the jury that if they "have a
reasonable doubt growing out of the evidence as to whether the
defendant, besides being present aiding and abetting, also par-
ticipated in the felonious design to rob or kill" the deceased,
they must acquit the defendant is properly refused as being
confusing and calculated to mislead the jury.

7. *Same; same* —On a trial under an indictment for murder, where
the evidence shows without dispute that some one other than
the defendant killed the deceased, and that defendant was pres-
ent at the time, but there was evidence tending to show a con-
spiracy between the slayer and the defendant, a charge which
instructs the jury that "no matter how strong the circum-
stances are pointing to the guilt of the defendant, yet, if they
can be reconciled with the theory that some other person may
have done the act, then the defendant is not proven to be
guilty," is erroneous and properly refused.

8. *Same; same; self-defense.*—On a trial under an indictment for mur-
der, a charge to the jury which postulates the defendant's ac-
quittal upon the jury not being satisfied beyond all reasonable

[McLeroy v. The State.]

doubt as to whether the killing was done in self-defense, but which fails to set forth the ingredients of self-defense is faulty and properly refused.

9. *Charge to the jury ; not necessary to repeat instructions already given.* It is not error for the trial court to refuse to give a charge requested by the defendant which is substantially a repetition of charges already given.

10. *Homicide ; conspiracy ; charge to the jury.*—On a trial under an indictment for murder, where it is shown without dispute that one other than the defendant committed the homicide, but there was evidence for the State tending to show a conspiracy between the defendant and such other person to commit the offense charged, while the evidence for the defendant tended to show that he was so drunk at the time of the homicide as to be incapable of entertaining a specific intent to kill, a charge which instructs the jury that if they "believe that if there was a plot between McLeroy [defendant] and Evans [the slayer] to rob Rowe, and if the killing was .after that plot had been consummated, and from a cause having no connection from the common object of the plot and was by Evans alone, the jury can not convict the defendant," asserts a correct proposition of law, and its refusal is error

11. *Same ; same ; same.*—In such a case, a charge which instructs the jury "that if they have a reasonable doubt as to whether the killing was done deliberately, or as to whether it was done premeditatedly, then they could not find the defendant guilty of murder in the first degree, and if they have a reasonable doubt as to whether the killing was done in malice then they could not find the defendant guilty of murder in either degree, but only of manslaughter at the most, and if after considering all the evidence the jury have a reasonable doubt as to the defendant's guilt of manslaughter arising out of any part of the evidence, then they should find the defendant not guilty of any offense," asserts a correct proposition, and its refusal is error.

12. *Same ; same ; same* —In such a case, a charge is free from error which instructs the jury that "drunkenness is no excuse for crime. That in this case there is no conflict in this evidence that Lum Evans killed Parker Rowe, and before the jury can find this defendant guilty, the jury must be satisfied beyond all reasonable doubt that this defendant conspired with Lum Evans with the intent to commit an unlawful act, and unless the jury believe beyond all reasonable doubt that this defendant was sufficiently sober to form the specific intent to do an unlawful act, you must acquit this defendant."

[McLeroy v. The State.]

APPEAL from the City Court of Gadsden.

Tried before the Hon. JOHN H. DISQUE.

The appellant, Andy McLeroy, was jointly indicted with Columbus alias Lum Evans, for the murder of Parker Rowe, and upon a severance being granted, the appellant was tried separately; was convicted of murder in the second degree, and sentenced to the penitentiary for ten years.

The defendant filed a plea in abatement to the indictment, in which he alleged that the indictment should be abated on the following grounds: 1. The list of the grand jurors is not shown to have been drawn by the county commissioners sitting as a jury commission. 2. Said list fails to show that it was drawn by the jury commission of Etowah county; and if so, it is not shown that the commissioners had taken the oaths required by law. 3. Said grand jury list purporting to be drawn by the jury commission fails to show that the said jury commission elected one of their members president as the law directs. 4. Said grand jury list if selected by the jury commission fails to show that said jury commission was ever organized. 5. Said jury list fails to show that it was drawn by all the jury commissioners or a majority of the jury commission. 6. Said jury list was not made by all the jury commission or a majority of said jury commission. To this plea in abatement the State demurred upon the ground that said plea states no ground which is sufficient at law for the quashing or abatement of the indictment. The demurrer was sustained, and the defendant duly excepted. The facts of the case and those pertaining to the ruling of the court upon the evidence, are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the defendant requested the court to give to the jury the following written charges, and separately excepted to the court's refusal to give each of these charges as requested: (1.) "The court charges the jury, if they believe all the evidence in this case, they must acquit the defendant." (2.) "The court charges the jury that if the jury believe from the evidence that Evans alone killed Parker Rowe, and that McLeroy was too drunk to aid or abet or to conspire with Evans in the commission of the crime, then the jury can not find the defendant guilty."

(4.) "The court charges the jury that if, upon a fair consideration of all the evidence, the jury have a reasonable doubt growing out of any part of the evidence as to whether McLeroy was sufficiently sober to form the specific intent to take the life of Rowe, the jury can not convict the defendant, McLeroy, of the offense charged in the indictment." (5.) "The court charges the jury that if Evans killed Rowe, and if McLeroy was too drunk to join in any conspiracy to take the life of Rowe, and did not aid or abet in such killing, the jury must acquit the defendant." (6.) "The court charges the jury that if the jury believe that if there was a plot between McLeroy and Evans to rob Rowe, and if the killing was, after that plot had been consummated, and from a cause having no connection from the common object of the plot and was by Evans alone, the jury can not convict the defendant." (7.) "The court charges the jury that if the jury have a reasonable doubt growing out of the evidence as to whether defendant, besides being present, aiding and abetting, also participated in the felonious design to rob or kill Rowe, the jury must acquit the defendant." (10.) "The court charges the jury, no matter how strong the circumstances are pointing to the guilt of defendant, yet if they can be reconciled with the theory that some other person may have done the act, then defendant is not proven to be guilty." (11.) "The court charges the jury that there is no conflict in the evidence that this defendant was drunk on that Saturday night, and if the jury have a reasonable doubt as to whether this defendant was sufficiently sober to form an intent to take life, they must acquit the defendant." (12.) "The court charges the jury that there is no evidence in this case that McLeroy killed Parker Rowe, and before the jury can convict this defendant, they must be satisfied beyond all reasonable doubt that this defendant aided or abetted or conspired with Lum Evans, who did the killing, and if the jury are so satisfied beyond all reasonable doubt, that the killing was not in self-defense, or that they have no reasonable doubt that it was done in self-defense before they can find this defendant guilty of any crime." (13.) "The court charges the jury that murder in the second

degree is the willful, malicious and intentional killing of of a human being, and unless each of these three ingredients has been proven to the jury beyond all reasonable doubt, they can not find this defendant guilty of murder in the second degree, and if the jury have a reasonable doubt as to whether this defendant was sufficiently sober to form the intent to take life, then they can not find the defendant guilty of anything." (15.) "The court charges the jury that murder in the first degree is the willful, intentional, malicious and premeditated killing of a human being, that if any of these four ingredients have not been proven beyond a reasonable doubt, they can not convict this defendant of murder in the first degree ; and if the jury has a reasonable doubt as to whether this defendant was sufficiently sober to form the intent to take life, they must find this defendant not guilty of any offense." (16.) "The court charges the jury that there is no evidence in this case that this defendant killed Parker Rowe, and before the jury can convict this defendant for any offense charged in this indictment they must be convinced beyond all reasonable doubt that this defendant aided and abetted Lum Evans in killing Parker Rowe by a previously formed community of purpose between said Lum Evans and this defendant ; and if the jury have a reasonable doubt as to whether this defendant was sufficiently sober to form a community of purpose with Lum Evans, they must acquit this defendant." (17.) "The court charges the jury "that if they have a reasonable doubt as to whether the killing was done deliberately, or as to whether it was done premeditately, then they could not find the defendant guilty of murder in the first degree, and if they have a reasonable doubt as to whether the killing was done in malice, then they could not find the defendant guilty of murder in either degree, but only of manslaughter at the most, and if after considering all the evidence the jury have a reasonable doubt as to the defendant's guilt of manslaughter arising out of any part of the evidence, then they should find the defendant not guilty of any offense." (18.) "The court charges the jury that good character itself is part of the evidence in this case, and if the jury upon a consideration of all the evidence have a reasonable doubt growing out of any

[McLeroy v. The State.] .

part of the evidence, the jury will give the defendant the benefit of such doubt and acquit him." (19.) "The court charges the jury that there is no conflict in this testimony that Lum Evans killed Parker Rowe, and there is no conflict in the evidence in this case that this defendant was drunk; and before the jury can find this defendant guilty, they must be convinced beyond a reasonable doubt that this defendant was sufficiently sober to form the intent to take life, or the intent to aid and abet Lum Evans in killing Parker Rowe, and if the jury are so convinced beyond all reasonable doubt they must further be convinced beyond all reasonable doubt that the killing of Parker Rowe by Lum Evans was not in self defense, and if the jury have a reasonable doubt whether Lum Evans killed Parker Rowe in self defense they must acquit the defendant." (20.) "The court charges the jury that the clothes worn by this defendant on that Saturday night are in evidence in this case, and the jury may examine these clothes and see whether the spots on these clothes are tobacco or blood, and if the jury believe these spots are tobacco juice, or if they are not satisfied beyond a reasonable doubt that these spots are blood, they may look to that fact, if it be a fact, what weight they will give the State's witness Cohenur." (21.) "The court charges the jury that drunkenness is no excuse for crime. That in this case there is no conflict in this evidence that Lum Evans killed Parker Rowe, and before the jury can find this defendant guilty, the jury must be satisfied beyond all reasonable doubt that this defendant conspired with Lum Evans with the intent to commit an unlawful act, and unless the jury believe beyond all reasonable doubt that this defendant was sufficiently sober to form the specific intent to do an unlawful act you must acquit this defendant."

BURNETT & CULLI, for appellant.—The court erred in its refusal to exclude the statements of the witness Wallace.—*Maxwell v. State*, 89 Ala. 150; *Perry v. State*, 91 Ala. 83. The court should have given the charges predicating the defendant's acquittal on the hypothesis of his being too drunk to form the specific intent to take life,

and too drunk to enter into a conspiracy to take life. The same intent to take life in an aider or abetter must exist as in the one who did the killing. Before the aider or abettor can be found guilty of any degree of homicide, and in this case the evidence is without conflict and proven by the State's own witness that defendant was very drunk and the court ought to.have given charges Nos. 2, 4, 5, 11, 15, 16, 19 and 21, which are on the idea of his extreme drunkenness set up in the different phases, and none of which are covered by the given charges. *Whitten v. State,* 115 Ala. 72; *White v. State,* 103 Ala. 72; *Chatham v. State,* 92 Ala. 47; *Fonville v. State,* 91 Ala. 39; *King v. State,* 90 Ala. 612; *Ford v. State,* 71 Ala. 385; *Tidwell v. State,* 70 Ala. 33; *Armor v. State,* 63 Ala. 173.

If the offense is of such a character that the exercise of a specific intent is a necessary element in the commission, it can not be said that a jury should be satisfied beyond a reasonable doubt of defendant's guilt, so long as the jury have a reasonable doubt arising from the evidence that the defendant was capable of forming such specific intent. Any other rule would authorize a verdict of guilty in a criminal case on a less degree of proof than that of satisfaction beyond a reasonable doubt.—*Henson v. State,* 114 Ala. 25; *Chatham v. State,* 92 Ala. 47; *King v. State,* 90 Ala. 612; *Walker v. State,* 91 Ala. 76.

The 6th charge requested by the defendant should have been given. Even if there was a conspiracy to rob Rowe and that had been consummated, and if Rowe and Evans fell out afterwards, and Evans killed Rowe and McLeroy had nothing to do with it, then certainly McLeroy cannot be guilty.—*Williams v. State,* 81 Ala. 1; *Thompson v. State,* 25 Ala. 41; *Frank v. State,* 27 Ala. 37; *Ruloff v. People,* 45 N. Y. 213.

CHAS. G. BROWN, Attorney-General, for the State. The sustaining of the demurrer to the plea in abatement to the indictment was free from error.—Cr. Code of 1896, pp. 167–8; p. 418, § 5269; *South v. State,* 86 Ala. 617; *State v. Simmons,* 10 So. Rep. (La). 382; *Linnehan v. State,* 116 Ala. 471; *Wilkins v. State,* 112 Ala. 55.

It is deemed unnecessary to comment on the rulings of the court on the testimony save only to say that the rulings are manifestly correct. The testimony sought to be admitted was either obnoxious to the rule that defendant cannot after the offense make testimony for himself, or to the rule that the party can not testify to his secret or undisclosed purpose or motive.—*Cobb v. State*, 115 Ala. 18 ; *Jordan v. State*, 81 Ala. 31.

The charges requested by the defendant, which were refused by the court, were erroneous, and were, therefore, properly refused.—*Webb v. State*, 106 Ala. 53 ; *Allen v. State*, 111 Ala. 80 ; *Miller v. State*, 107 Ala. 58 ; *Garrett v. State*, 97 Ala. 18 ; *Crawford v. State*, 112 Ala. 1 ; *Rogers v. State*, 117 Ala. 9 ; *Yarbrough v. State*, 115 Ala. 92.

HARALSON, J.—1. There was no error in sustaining the demurrer to the plea in abatement to the indictment. *Linnehan v. The State*, 116 Ala. 471.

2. The State introduced one W. M. Wallace, who testified that he saw Evans on Monday morning after Rowe was killed, and that he told witness that he killed Rowe because he accused him of stealing his money, and because Rowe cut him. This conversation the State introduced without objection by defendant, and as a part of this conversation which the State was drawing out, Evans told witness,—explaining when he cut Rowe,—that after Rowe cut him and accused him of stealing his money, he, Evans, started in to kill him. The defendant,— quoting the language of the bill of exceptions,—"moved to exclude what the witness had said as to how Evans started in to kill him, because not made in the presence of defendant, and it is illegal, irrelevent and immaterial," which motion the court overruled. The ruling was justified on the grounds that the State was introducing a conversation between witness and Evans to which no objection was raised on the part of defendant, until all of it had been brought out, and he then moved to exclude a part of it. This, if the evidence sought to be excluded was injurious to him, was an experiment he was not authorized to make. He should have objected in the beginning. But, we are unable to see any

injury resulting to defendant from the ruling, even if erroneous, since the evidence was favorable to defendant.    It simply showed, if true, that Evans and not he was the one who slew Rowe.

3. There were but two witnesses to the homicide, Evans and defendant.    They were jointly indicted but separately tried, and Evans was convicted of murder in the second degree.    On the trial of defendant, both Evans and he swore that he had nothing in the world to do with the killing of Rowe, and never saw Rowe's money after they left Gadsden.    The State introduced several witnesses who testified that Evans told them, at different times, that he himself did the killing and defendant had nothing to do with it.    The evidence introduced was as pointed,—as to any conspiracies between the two,—that defendant had never entered into any conspiracy with Evans, either to rob or kill Rowe, or that he ever did in fact rob him.    The testimony of each of these witnesses on these points, was such, as without more, the general charge could have been given for defendant.

The other evidence tends to show that Rowe had been robbed of his money ; that he had about $40 when he went to Gadsden on Saturday, in the evening of which day he was killed.    If he spent any of it while there, it is not shown.    It further shows, that he, in his own conveyance, and Evans and defendant in theirs, left Gadsden and travelled together to the place where he was killed, and that on the way he showed J. W. Smith, who accompanied him about five miles out, some six or eight dollars in silver and a roll of paper money about an inch thick, the outside bill of which was a five dollar note ; and when his body was examined the next day at the place of the killing, there was found on him only twenty-five cents in dimes and nickels ; that Rowe was very drunk, so much so, that he was taken into the vehicle with Evans and defendant, and the horse in his conveyance was tied to the rear end of theirs ; that one of the traces in Evans' wagon became unhitched and he got out to adjust it, when Rowe being aroused, asserted that his money had been stolen and that Evans had taken it, and getting out of the wagon, the altercation ensued in which he was killed by Evans.    The latter

in testifying to the occurrence said—after stating that Rowe accused him of taking his money and he denied it—that "Rowe got out from back of hack. Rowe said it was a damn lie, that I had his money, and he would get it or kill me or I kill him. I heard his knife click as he came at me. It was all over in a minute and a half. He grabbed at my collar with left hand and cut me with the right. When he came at me the last time, he was trying to make a lick at me, when I cut him several times, when he fell. During the difficulty, defendant never got out of hack. He never got out of hack till we were across the creek (after the killing). He had nothing in the world to do with it, never saw money of Rowe after we left him at East Gadsden when Rowe was showing it to Smith. * * When Rowe got out of the wagon, he was a drunk man. McLeroy was a drunk man and not able to take care of himself." It was otherwise shown that defendant was drunk.

The evidence on which the State relies to show defendant's complicity in the killing is substantially that James Rowe, for the State, testified that the defendant, on Monday morning after the killing on Saturday night, told him that Rowe had money. At one time he said it was about $15, again that it was about $20, and at another time that it was $25 or $30; and that one J. C. Cohenur, testifying for the State, stated that defendant came to his house about 4:30 o'clock on Sunday morning, was riding a bay horse and leading a mule; that witness was out feeding his stock when defendant seeing him, rode up, and proposed a trade, and witness told him he would trade with him, if it was not Sunday. Defendant said, he would like to trade, as he had been in a difficulty and needed some money, and that he had been up all night; that he saw reddish spots on his coat, vest and shirt, which he took to be vomit, but recalling it to mind, in his best judgment it was blood; that he took breakfast, but appeared to be drunk and ate but little; that witness asked him to wash his hands, but he declined, stating he had washed them; that witness traded with him for the mule and promised to give him ten dollars on Monday, but did not pay him on that day, as

[McLeroy v. The State.]

the man who brought the order was not defendant and the order was not in defendant's handwriting, with which he was acquainted.

The defendant testified that he was drunk on the occasion, was asleep when Evans aroused him, and asked him to hold the lines till he fixed the trace; that the clothes, which were exhibited to the jury, were the ones he wore that night, and were in the same condition they were that night, and there were no signs of blood on them; that he could not write his name nor could he read; that he got out of hack after they crossed the creek and rode his horse and led one; could hardly keep on his horse, and the one he was leading got loose at a time when he must have been asleep; that he turned back to look for it, and in that way he became separated from Evans; that he did not tell Cohenur he had trouble and needed some money, nor did he tell him he had washed his hands; that he heard Rowe accuse Evans of having his money and heard Evans deny it, and they came together, but that he did not and could not see any licks struck. He also testified that Rowe was a particular friend of his; and the evidence showed, that Rowe's cousin married defendant's daughter.

4. The well settled rule in reference to conspirators is, that "When two or more persons combine or conspire to do an unlawful act, or to commit a criminal offense, each is equally responsible for the act of the others in furtherance of the common purpose, if he is present at the time, aiding, encouraging, or ready to assist if necessary, and if the act done is within the scope of their common purpose, or is the natural and proximate consequence of the act intended; but they are not responsible for an act prompted by the individual malice of the perpetrator, and it is a question for the jury whether the act done was within the scope of the common purpose, or grew out of the individual malice of the perpetrator."—*Pierson v. The State*, 99 Ala. 148; *Williams v. The State*, 81 Ala. 1; *Evans v. The State*, 109 Ala. 11.

It is also the well settled doctrine of this court, that when the act charged is one committed with a particular or specific intent, which is the essence of the crime, drunkenness, as affecting the mental state and condition of the accused, is a proper subject for the consideration

of the jury in deciding the question of intent.— *White v. The State*, 103 Ala. 72; *Chatham v. The State*, 92 Ala. 47; *Engelhardt v. The State*, 88 Ala. 100.

5. From the foregoing it will appear that charges requested by defendant, numbered 2, 4, 5, 11, 13, 15, and 16, each ignored any reference to the alleged conspiracy formed between Evans and defendant, upon which the State relied for his conviction, and were on that account properly refused.

The 7th was confused, not clear, and was calculated to mislead.

The 10th was bad. It is not disputed who killed Rowe—Evans did it; and yet the charge postulates that if he did, defendant could not have been guilty. He may have been guilty also. It was for the jury to determine under all the facts.

The 12th and 19th are faulty, if for no other reason, in not setting forth the ingredients of self-defense—*Roden v. The State*, 97 Ala. 54; *Miller v. The State*, 107 Ala. 42.

The 18th finds duplication in given charges C and D, and was unnecessary to be repeated.

The 20th, in calling attention to and emphasizing a particular part of the evidence, has been too often condemned, to require comment.

Refused charges 6, 17 and 21 appear to be free from fault and should have been given; and for the error in refusing to give them, the judgment must be reversed and the cause remanded.

Reversed and remanded.