(87 South. 708)

LOCKLEAR v. STATE. (7 Div. 640.)*

(Court of Appeals of Alabama. June 15, 1920. Rehearing Denied Nov. 9, 1920.)

1. CRIMINAL LAW ☞364(3)—HOMICIDE ☞180—EVIDENCE AS TO ACTS OF DEFENDANT FOLLOWING ASSAULT HELD ADMISSIBLE AS RES GESTÆ AND AS SHOWING MENTAL CONDITION.

On a trial for assault with intent to murder, evidence that after the assault defendant walked out of the storehouse where it occurred, looked back, and told a companion to "come on" and got into an automobile, and drove away was admissible as part of the res gestæ and as having a slight tendency to show defendant's mental condition at the time of the assault, where he claimed that he was drunk.

2. HOMICIDE ☞180 — EVIDENCE THAT DEFENDANT DROVE AUTOMOBILE HELD COMPETENT, WHERE HE CLAIMED HE WAS DRUNK.

Where defendant, charged with assault with intent to murder, claimed he was too drunk to form a felonious intent, evidence that he was driving an automobile when he came to the

---

place of the assault and when he left was competent.

**3. HOMICIDE ⊚⇒338(3)—ADMISSION OF EVIDENCE HELD CURED BY SUBSEQUENT INTRODUCTION OF EVIDENCE BY DEFENDANT.**

The admission of evidence tending to disprove defendant's claim that he was drunk, before he had offered any proof of intoxication, if error, was cured by subsequent evidence of intoxication offered by defendant.

**4. CRIMINAL LAW ⊚⇒404(4) — CLOTHING WORN BY ASSAULTED PERSON HELD ADMISSIBLE.**

On a trial for assault with intent to murder, the clothing worn by the assaulted party at the time of the assault was admissible to show where he was stabbed and the amount of blood and any other fact connected with the difficulty disclosed by an examination of it.

**5. CRIMINAL LAW ⊚⇒404(4)—CLOTHING NOT INADMISSIBLE BECAUSE CUT BY DOCTOR IN DRESSING WOUNDS.**

That the undershirt worn by a party assaulted with intent to murder was cut off by the doctor who dressed the wounds did not render it inadmissible, unless such cutting obliterated the cuts made by defendant's knife so as to prevent identification; it being for the jury to say which cuts were made by the doctor and which by defendant.

**6. HOMICIDE ⊚⇒268 — WHETHER CUTS IN CLOTHING CORRESPONDED WITH WOUNDS HELD A QUESTION FOR THE JURY.**

On a trial for assault with intent to murder, whether cuts in the assaulted party's clothing introduced in evidence corresponded with the wounds on his person was a question for the jury.

**7. CRIMINAL LAW ⊚⇒1170½(2) — QUESTION ON CROSS-EXAMINATION HELD RENDERED HARMLESS BY ANSWER THAT WITNESS DID NOT KNOW.**

Where defendant claimed he was drunk when he assaulted the prosecuting witness, any error in permitting the state to ask his witness on cross-examination where he bought the whisky drunk by him was without injury, where the witness answered that he did not know.

**8. HOMICIDE ⊚⇒180—ACTS AND CONDUCT BEFORE AND AFTER DIFFICULTY ADMISSIBLE TO SHOW MENTAL CONDITION.**

On a trial for assault with intent to murder, defendant's acts and conduct shortly before and shortly after the difficulty were admissible as going to show his mental condition at the time of the difficulty, where he claimed he was drunk.

**9. CRIMINAL LAW ⊚⇒855(4)—HOMICIDE ⊚⇒ 180, 338(1)—WHERE DEFENDANT HAD DINNER ABOUT TIME OF ASSAULT HELD COMPETENT OR HARMLESS; FACT THAT DEFENDANT DINED WITH JUROR IMMATERIAL.**

Where defendant, charged with assault with intent to murder, claimed he was drunk, evidence as to where he got his dinner about the time of the assault was competent if it shed any light on the question of his mental condi-

tion, and, if it did not, was harmless, and the fact that he dined with one of the jurors was immaterial.

**10. HOMICIDE ⊚⇒174(7)—EVIDENCE THAT DEFENDANT'S FLIGHT WAS SECRET HELD COMPETENT.**

Where defendant fled to another state after his assault on the prosecuting witness, evidence that the flight was carried out with secrecy was admissible as tending to show a consciousness of guilt.

**11. CRIMINAL LAW ⊚⇒822(11)—INSTRUCTION AS TO INFERENCE OF INTENT HELD NOT ERRONEOUS IN VIEW OF WHOLE CHARGE.**

On a trial for assault with intent to murder, instructions that defendant's intent must be gathered from his conduct, that it must of necessity be inferred from the character of the assault, the want or use of a deadly weapon, the presence or absence of excuse or palliating facts, and that the character of the wounds might be considered, etc., *held* not erroneous as singling out or giving undue prominence to parts of the testimony, where the charge as a whole was a careful and clear presentation of the law of the case as applied to the evidence.

**12. CRIMINAL LAW ⊚⇒753(2)—GENERAL AFFIRMATIVE CHARGE PROPERLY REFUSED WHEN QUESTION WAS FOR JURY.**

When there was a question for the jury a general affirmative charge requested by defendant was properly refused.

**13. HOMICIDE ⊚⇒341—REFUSAL OF INSTRUCTIONS DEFINING A WORD NOT REVERSIBLE ERROR, WHEN SUBSTANTIAL RIGHTS NOT AFFECTED.**

On a trial for assault with intent to murder, the refusal of charges defining "aforethought" was not reversible error, where it did not injuriously affect defendant's substantial rights.

**14. CRIMINAL LAW ⊚⇒1173(1)—REFUSAL OF INSTRUCTIONS DEFINING WORDS NOT REVERSIBLE ERROR UNLESS MEANING OBSCURE.**

The giving or refusing to give instructions containing mere definitions of words will not work a reversal, unless the meaning of the word is so obscure as to need explanation in order that the jury may arrive at its correct meaning as applied to the facts.

**15 HOMICIDE ⊚⇒286(1)—INSTRUCTION PREDICATED ON DEFENDANT'S SECRET UNDISCLOSED INTENTION PROPERLY REFUSED.**

On a trial for assault with intent to murder, an instruction that, if defendant knew he was cutting the prosecuting witness, but did not intend to kill him, he could not be convicted, was properly refused, as it was predicated upon defendant's secret undisclosed intentions.

**16. CRIMINAL LAW ⊚⇒829(6)—HOMICIDE ⊚⇒ 294(½)—INSTRUCTION AS TO DRUNKENNESS OR ANYTHING ELSE AFFECTING DEFENDANT'S MIND HELD PARTLY ABSTRACT, AND PROPERLY REFUSED, WHERE COVERED BY CHARGE GIVEN.**

An instruction that defendant could not be convicted of assault with intent to murder if

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

his mind was in such condition, by reason of drunkenness or anything else, that he could not form an intent or purpose to commit murder so as to appreciate and understand that he was perpetrating a murder or attempting to do so was properly refused, where there was no evidence of anything other than intoxication to mitigate the offense, as it was partly abstract, and where the correct part had already been covered.

**17. Homicide ⊗══294(2) — Instruction held Bad as Seeking Complete Acquittal in Case of Intoxication.**

On a trial for assault with intent to murder, where there was no evidence of anything other than intoxication affecting defendant's mind, a charge that if he did not realize what he was doing he could not be convicted of any offense was bad, as seeking a complete acquittal based on intoxication.

**18. Homicide ⊗══286(2)—Instruction as to Meaning of Malice Aforethought held Misleading.**

On a trial for assault with intent to murder, an instruction that though defendant had malice at the precise instant when he stabbed the prosecuting witness, yet if such malice had not been entertained long enough to have been considered and acted upon it was not malice aforethought was properly refused, as misleading, since if defendant had malice at the time he struck the blow and the assault was otherwise unlawful, he was guilty of felonious assault.

**19. Homicide ⊗══300(11) — Instruction on Self-Defense Properly Refused when Self-Defense not Claimed.**

On a trial for assault with intent to murder, an instruction on self-defense was properly refused as abstract, where defendant did not claim self-defense.

**20. Criminal Law ⊗══829(1)—Requested Instructions Already Covered Properly Refused.**

Requested charges covered by the court's oral charge were properly refused.

**21. Homicide ⊗══332(2)—Conviction for Assault not Reversed, Unless Court Clearly Convinced Conviction should not be Had.**

A conviction for assault with intent to murder will not be reversed on the ground that the circumstances of the assault show that defendant must have been drunk as claimed, unless the court is clearly convinced from the evidence that a conviction should not be had.

Appeal from Circuit Court, Etowah County; W. J. Martin, Judge.

Fred Locklear was convicted of assault with intent to murder, and he appeals. Affirmed.

The following are the assignments of error referred to in the opinion:

(18) Oral charge of the court:

"I think, gentlemen, that I have probably covered this matter, but in the event I did not, and that you may understand what the court desires to say to you, in determining the intent of defendant at the time of the alleged assault, you may consider the character of the wounds, whether or not they were such as to cause serious bodily harm or death, in determining whether or not the defendant at the time intended to take the life of Tom Sanson."

Assignments 19 and 20 sufficiently appear.

The charge under assignment 24, refused to the defendant, is as follows:

"If at the time of the difficulty, the defendant knew that he was cutting the defendant, but did not intend to kill him, you cannot convict him of assault with intent to murder."

Assignment 25: A charge refused to the defendant is as follows:

"If the defendant's mind, at the time of the difficulty, was in such a condition by reason of drunkenness, or anything else, that he could not form in his mind the intent and purpose to commit murder, so as to appreciate and understand that he was then and there perpetrating a murder or attempting to do so, then you cannot convict him of assault with intent to murder."

Assignment 29:

A charge refused to the defendant as follows: The usual charge as to self-defense.

Charge 26:

"If the defendant did not realize what he was doing, when he assaulted Sanson, you cannot convict him of any offense."

Charge 9:

By the term "malice aforethought" is meant malice entertained and present in the mind and considered by the mind before the act is committed. Although the defendant may have had malice at the precise instant, when he struck Sanson with a knife, yet, if that malice had not been entertained in the mind long enough to have been considered and acted upon it is not malice aforethought.

E. O. McCord & Son, of Gadsden, for appellant.

The burden is on the state to offer evidence that at the time of the assault the defendant entertained, or had the capacity to entertain, the intent. 13 Ala. App. 133, 69 South. 376. Court erred in its oral charge to the jury. 1 Ala. App. 178, 56 South. 21; 8 Ala. App. 364, 62 South. 313; 63 South. 18. The court erred in admitting the clothes in evidence. 150 Ala. 327, 43 South. 342. Counsel discuss other assignments of error, but without further citation of authority.

J. Q. Smith, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.
No brief reached the Reporter.

⊗══For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

SAMFORD, J. [1] The witness Tom Sanson was permitted to testify that immediately after the defendant had cut witness and witness had gone out of the storehouse on to the sidewalk, defendant walked out of the storehouse, looked back, and said to the party who had gone there with him, "Come on," got into an automobile, and drove away. This was so closely connected with the assault as to be a part of the res gestæ and, while slight, it tended to show the mental condition of the defendant at the time·of the assault. The objection and motion were properly overruled.

[2, 3] The fact that defendant was driving an automobile when he came up and when he left was competent. It being contended by the defendant that he was too drunk to form the felonious intent, all of his acts and his manner at and near the time of the alleged assault were relevant to go to the jury in determining this question; that the court permitted this before the defendant had offered such proof is not reversible error, as, if error, it was cured by the subsequent evidence offered by defendant.

[4, 5] The clothing worn by the party assaulted at the time of the assault was admissible to show the places where the stabs were made, the amount of blood, and any other fact connected with the difficulty that might be disclosed by an examination of them. That the undershirt had been cut off by the doctor who dressed the wounds would not render the undershirt inadmissible, unless such cutting had obliterated the cuts made by defendant's knife so as to prevent identification. Upon the testimony it was for the jury to say which cuts in the undershirt had been made by the doctor and which by the knife of defendant. The clothing of a party assaulted, worn at the time of the assault, is so closely connected with the corpus that they frequently furnish the best evidence as to the extent, location, and character of the wounds, and where those evidences have not been changed or obliterated, are always admissible. 4 Ency. Dig. Ala. Repts. p. 173, § 249.

[6] Whether the cuts in the clothing corresponded with the person of the party assaulted was a question for the jury. If they did, it might tend to corroborate the state's theory, and, if not, it might tend to aid the defendant.

[7] If there was any error in permitting the state to ask defendant's witness on cross-examination where defendant bought the whisky he was supposed to have drunk, it was without injury to defendant, as the witness answered that he did not know.

[8, 9] As we have said above, the acts and conduct of the defendant shortly before and shortly after the difficulty were admissible, as going to show his mental condition at the time of the difficulty, and, while the place where the defendant got his dinner may or may not have shed any light on that question, if it did, it was competent; if it did not, it was without possible injury. The fact that he dined with one of the jurors engaged in trying the case was of no consequence.

[10] It was shown without conflict that after the assault, defendant fled and went to the state of Texas, and was brought back by the officers of the law, and afterwards escaped. In proving this flight, the state was authorized to prove any fact going to show that it was carried out with secrecy, as going to show a consciousness of' guilt.

[11] The defendant insists that the court committed reversible error in its oral charge to the jury, in that'it used the following expressions:

"You may gather the man's intent from his conduct as shown by the testimony." "The intent must obtain—must of necessity be inferred from the character of the assault, the want or use of a deadly weapon, and the presence or absence of excuse or palliating facts or circumstances." "What do you say from the facts in this case as to the assault—this charge of assault with intent to murder? Was it unlawful? Without excuse, or justification, was it purposely made without mitigating or extenuating circumstances? If so, it was malicious."

These expressions were all well within the province of the trial court in delivering his general instructions to the jury, when taken and considered in connection with the whole charge of the court, which this court has done, and which we find was a careful and clear presentation of the law of the case as applied to the evidence. The above is also applicable to the eighteenth assignment of error. It is well settled that isolated expressions of the court cannot be made the basis of reversal, but such expressions must be considered in connection with the entire charge. The authorities cited are not in point. The charge of the court does not single out or give undue prominence to parts of the testimony.

[12] The nineteenth and twentieth assignments of error are based upon the refusal of the court to give at the request of the defendant the general affirmative charge. Upon what theory these charges were asked this court is not advised. The question was for the jury, and the charges were properly refused.

[13, 14] The defendant among many others requested the following charge in writing:

"Aforethought means thought of, and considered, beforehand," and "aforethought means thought of beforehand."

While these two definitions as asked are correct, it may be doubted whether they add any elucidation to the word itself. The giving or refusing to give mere definitions of

words will not work a reversal, unless the meaning of the word is so obscure as to need explanation in order that the jury may arrive at its correct meaning as applied to the facts in the particular case. In viewing this whole record it does not appear that the failure to give these charges injuriously affected the substantial rights of the defendant.

[15-17] The charge under assignment 24 is predicated upon the secret, undisclosed intentions of defendant, and was properly refused; that under assignment 25 was bad, in that there was no evidence of any other influence than that of intoxication offered in mitigating the offense charged, and to that extent was abstract. And, besides, that part of the charge asserting a correct proposition had already been covered in the oral charge of the court. Charge 26 was obviously bad, in that it sought a complete acquittal, based upon intoxication.

[18] Charge 9 is misleading. If the defendant had malice at the time he struck the blow, and the assault was otherwise unlawful, he would then be guilty of the felonious assault.

[19] The charge made the basis of the twenty-ninth assignment of error was abstract. Under the facts of this case, the defendant did not claim self-defense.

[20] Charges numbered 12 and 13 were covered by the court's oral charge.

[21] It is urged by the appellant's counsel that the very wantonness of the attack made by the defendant, coupled with the absence of any proof of previous ill feeling, should be sufficient to cause this court to overrule the judgment of the judge trying this case on motion for a new trial, set aside the verdict of the jury who tried the cause, had all the parties and witnesses before them, heard all the testimony, and rendered their verdict and judgment under their oaths, on the theory that the defendant was too drunk to form a design to take life or to deliberate with legal malice. It may be that such was the state of the defendant's mind at the time he made the murderous assault, or it may be that with his mind influenced with liquor, which he had voluntarily taken, he assumed the role of bully, and, being resentful towards the injured party that he did not tamely submit to his vile insults, he determined to kill him, as the evidence for the state tends to prove. Human life in this state is too sacred, or ought to be, for appellate courts to set aside verdicts of juries and judgments of trial courts convicting defendants in this class of cases, unless the appellate court is clearly convinced from the evidence that a conviction should not be had. The defense is of such easy simulation as to require at the hands of the trial court and jury the most careful scrutiny. The facts in this case would not justify this court in holding that the trial court had committed error in overruling the motion for a new trial.

We find no error in the record, and the judgment is affirmed.

Affirmed.