152 So. 455

**GROOMS v. STATE.**

4 Div. 715.

Supreme Court of Alabama.

Jan. 25, 1934.

134

T. L. Borom, Jr., of Troy, for appellant.

Thos. E. Knight, Jr., Atty. Gen., for the State.

No briefs reached the Reporter.

KNIGHT, Justice.

The appellant, Judge Grooms, was indicted by a grand jury of Dale county for the offense of murder in the first degree, and, upon his trial under the indictment, was convicted of murder in the first degree, and his punishment was fixed by the jury at death.

The record proper shows indictment in due and legal form, due arraignment, trial, conviction, and sentence. No errors appear upon the record proper.

The evidence in this case leaves no room for doubt that the appellant on or about the 6th day of October, 1932, at an early hour in the morning, killed his wife, Rachael Grooms, by striking her a number of blows on the head and body with a stick. The blows were so severe that her skull was crushed. It appears without dispute that for some days before the day of the tragedy the appellant had been in a hostile frame of mind toward his wife, and, in fact, had made repeated threats against her life.

The evidence on the part of the state tended to show a most unprovoked and atrocious crime, and the defendant's own testimony leaves no room to doubt that he pursued his fleeing wife quite a distance from her home and killed her.

■ Nathe Lewis, a witness on behalf of the state, after testifying that Rachael Grooms, the deceased, had died on October 6th (1932), was asked by the solicitor: "Did you see her before that day?" The witness had answered: "Yes, sir," and thereupon the defendant objected to the question. The subsequent testimony of the witness disclosed the relevancy and materiality of the question. But, whether so or not, the objection came too late.

■ The state was permitted, over objection of the defendant, to propound to this witness the following question: "Did you hear Rachael say anything to the defendant?" The question referred to an occurrence on Sunday next before the Thursday on which the deceased was killed. The witness answered as follows: "When I seen her come out passing ice-cream around and I was on the porch Judge Grooms was on the porch and she came there and passed it to him, and he said, 'No, I don't want none of your damned ice-cream,' and she passed round and I told her I didn't want any at all, and when she got through passing it round she went back in the kitchen, I presume, and after while she came back and sets down and says, 'Mr. Judge, what's the matter with you, what in the world is the matter with you? I didn't even come home mad and since I've been here,' and he says, 'Why, they're telling damned lies on me' and she says, 'Mr. Judge.'" In answer to further questions by the solicitor this witness testified that the defendant in the same conversation had said: "I'm going to kill every one of you."

In view of all that was said by the deceased to the defendant and the defendant's statements in connection therewith, we do not think the court committed error in overruling the defendant's objection to the question above set out. Leaving out, as uncalled for, the voluntary statement of the witness, the testimony elicited was relevant and material, and tended to show the animus of the defendant towards his wife.

■ The defendant insists that the court committed error in overruling his objection to the following question propounded by the solicitor to witness W. H. Connell: "Did you hear him (defendant) say anything that morning after he was arrested?" This was but a preliminary question, intended as a predicate for the further inquiry as to what he did say. It was not subject to objection. However, the witness had answered the question before any objection was made, but before ruling on the objection the witness testified that no threats were made against defendant, and no inducements were offered him, to make the statement, and it was then the court overruled defendant's said objection. We perceive no error in this ruling of the court.

■ The defendant objected to the following question propounded by the solicitor to the constable, who testified as a witness for the state: "After you put the defendant under arrest did he make any statement to you concerning the death of his wife?" To this question the witness answered: "No, he did not make any statement at all." This witness was allowed, over objection of defendant, to state what the defendant had said to Nathe Lewis, but the bill of exceptions recites that, before the witness was allowed to answer the question, it was shown that no threats were made against the defendant and no inducements were offered him, to induce him to make the incriminatory statement,

and that it was voluntarily made. There was no error in this ruling of the court.

The defendant also complains that the court committed error to his injury in overruling his objection to the following question propounded to the witness Patterson (the constable): "Did you hear him make a statement to one of those girls?" Before any objection was made the witness had answered: "Yes." Furthermore, the question was but the usual preliminary question, and not objectionable. There was no error in this ruling of the court.

█ Whether Alvin Jones did or did not make any threats against the defendant was, under the evidence in this case, wholly immaterial and irrelevant.

██ On cross-examination of Dolly Lewis, a witness for the state, the defendant propounded to her the following question: "Had you not on two different occasions stole money from defendant's pockets?" The court committed no error in sustaining the state's objection to the above question. Evidence that the witness was of general bad character, or of bad character for truth and veracity, would have been admissible for purposes of impeachment. While this is true, it is well settled that particular independent facts, though bearing on the question of veracity, cannot be put in evidence for the purpose of discrediting the witness. Whart. Cr. Ev., § 476; 1 Greenl. Ev. § 461; McQueen v. State, 108 Ala. 54, 18 So. 843; Thompson v. State, 100 Ala. 70, 14 So. 878; Moore v. State, 68 Ala. 360; Crawford v. State, 112 Ala. 1–19, 21 So. 214; Smith v. State, 161 Ala. 94, 49 So. 1029.

█ Likewise, the following questions propounded on cross-examination by the defendant to said witness Dolly Lewis called for irrelevant, incompetent, and immaterial testimony : "Since you have been living in there haven't you been keeping up a continual confusion in that family," and "I will ask you if he has not tried to get you to move out of the house?"

█ H. C. Skipper, a witness on behalf of the defendant, was asked by the defendant the following question: "What did he (defendant) tell you when he came to your house?" Some time after the homicide had been committed, the defendant went to the home of Mr. Skipper, and it was then that the defendant sought to prove some statement made by him to Mr. Skipper. The court properly declined to allow the defendant to prove the statement he then made to Mr. Skipper. It was not part of the res gestæ. It was but a self-serving declaration. Pitts v. State, 140 Ala. 70, 37 So. 101; Bodine v. State, 129 Ala. 106, 29 So. 926; Ferguson v. State, 134 Ala. 70, 32 So. 760, 92 Am. St. Rep. 17.

It appears from the evidence without dispute that, after the deceased had killed his wife, he left the scene of the homicide, went back to his house, dressed, and then went over to the home of Mr. Skipper. Under no rule of evidence can we affirm that any statement or declaration that the deceased may have then made to Mr. Skipper would be competent as being a part of the res gestæ. The difficulty had ended, the wife was dead, and the declaration sought to be introduced was separate in point of time and place. The proposed evidence was clearly incompetent. Harkness v. State, 129 Ala. 71, 30 So. 73; Nelson v. State, 130 Ala. 83, 30 So. 728; Goley v. State, 87 Ala. 57, 6 So. 287; Bowen v. State, 217 Ala. 574, 117 So. 204.

█ There is no merit in defendant's exception to the ruling of the court in sustaining the state's objection to the following question propounded to the defendant: "What was he (Alvin Jones) doing down there?" The question called for occurrences that took place the night before the homicide, and which were wholly irrelevant to any issue in the case.

There were a few other exceptions reserved by the defendant to the ruling of the court in admitting and excluding testimony. Each such ruling has been considered by us, and found to be without merit.

It only remains to be said that we are in full accord with the trial court in overruling the defendant's motion for a new trial. Under the evidence in the case, we cannot see that any other course was open to the court.

Finding no reversible error in the record, it follows that the judgment of the court below must be, and is, affirmed.

The day fixed for the execution of the appellant having passed, Friday, March 23, 1934, is hereby fixed for the execution of the death sentence heretofore pronounced upon the appellant.

Affirmed.

All the Justices concur.