37 So.2d 434

**FARLEY v. STATE.**

**6 Div. 454.**

Court of Appeals of Alabama.
June 29, 1948.

Rehearing Denied Aug. 3, 1948.

56

Chas. E. Tweedy, Jr., of Jasper, for appellant.

A. A. Carmichael, Atty. Gen., and Thos. F. Parker, Asst. Atty. Gen., for the State.

CARR, Judge.

This is an appeal from a conviction in the court below of the offense of assault with intent to murder. The injured party was the wife of the accused. A special plea of not guilty by reason of insanity was interposed.

The appellant entered the armed service in February 1943. He was taken an enemy prisoner in September 1944 and remained as such until April 1945. He was discharged from the Army in November 1945, at which time he returned to his home and reentered the employment, at a mine, of the Alabama By-Products Company. His marriage to the prosecutrix followed in February 1946, and the alleged assault occurred in July of the same year.

The wife became pregnant, and, according to her testimony, this was a disappointment to the defendant. This fact and other conditions caused considerable unhappiness and discord in the marriage relation. About a week prior to the time of the main event a rather serious misunderstanding arose, at which time the appellant drew a pistol on his wife and threatened to kill her. The latter left and went to the home of her parents, but returned a day or two later.

On the occasion of instant concern the differences were renewed in the little, humble home. The defendant secured an ax and proceeded to destroy some of the furniture and when his wife attempted to prevent this, according to her testimony, this happened: "A. He hit me with the ax. First he knocked me down in the floor, I got hold of the ax, and he got down on the floor with his knees and mashed my fingers loose, and took it away from me, and then he went in the bed room and got his gun and come back. I started out on the porch, and he fired the first shot and didn't hit me, and the next shot hit me in the head. I fell on the floor, on the porch, on my hands and knees, and he stood over me and snapped the gun. Then he went out in the yard and snapped the gun some more, and then he left and some men come and got me and carried me to the hospital.

"Q. Did he make any statement at any time? A. When he started shooting at me, and said he was going to kill me and 'that damned little brat too.' "

The appellant denied that he threatened to take the life of his wife or that he was unhappy or discontented on account of expectation of a child. He claimed that at the time in question he was trying to persuade his wife to go back to the home of her parents and get some of her clothes which she had left there at a prior time, and on account of her refusal he proposed to break up the furniture with an ax. At this time we follow his testimony from the record: "A. I brought the ax in the house, and she run in the bed room and set down, so I went in where she was and was talking to her, and she started crying, and I carried the ax and set it against the door on the back porch. I came back and drew a stool by her and went to love her up, and she wouldn't let me touch her, and when I raised up she went and got the ax.

"Q. What did she do with it? A. She brought it back in the house—that is when I broke the chairs.

"Q. Did she start on you with the ax? A. After I broke the chairs.

"Q. What did you do? A. I grabbed the ax, and she said, 'I will slap your damned brains out, you son of a bitch—'

"Q. Do you remember breaking any glass? A. I wouldn't be for sure.

"Q. Do you remember what happened when she started on you with the ax? A. Yes, I grabbed the ax, and she was coming at me with such terrific force that she fell, and I did too.

"Q. Then did you get up? A. After she said she wouldn't hit me if I would let her up. It wasn't my intention to harm her.

"Q. Did you break any more furniture? A. I think that is when the cabinet was broke.

"Q. Do you remember getting your gun? A. No, sir.

"Q. Do you remember shooting her? A. No, sir.

"Q. What was the next thing you remember after that? A. I remember Mr. Cooper giving me a pack of cigarets, I think we stopped and got some.

"Q. What is the next thing you remember? A. I was in jail in Jasper."

On the insanity plea, considerable evidence was introduced both by the appellant and the State. Lay witnesses were used entirely with the exception of expert testimony incident to an examination of the accused which was made subsequently to the time of the assault.

Within a few days after the affray the defendant was committed to the Veterans Hospital at Tuscaloosa, Alabama. There he was examined by Dr. George H. Ingram, who was at the head of the mental department of the institution. The doctor testified that he did not observe the appellant prior to the time of the difficulty; that as a result of the examination and after consultation with the entire medical staff of the hospital, the decision was reached that the patient was affected with "psycho neurosis, anxiety state"; and that this is a type of mental disease or insanity.

■ Over appellant's objection on the general grounds, the court permitted the prosecutrix to testify that the defendant tried to induce her to get rid of her unborn child and that he bought some medicine for this purpose.

As insisted by counsel, it may be accurately stated that the immediate difficulty arose over the refusal of the injured party to go to her parents' home and get her clothes.

As we have indicated, one of the basic causes of the lack of harmony between the two parties was the fact of the enceinte condition of the wife. This is clearly evinced by this question and answer:

"Q. How long had he been asking you to get rid of your baby that you were pregnant with? A. Ever since I got that way."

We entertain the view, therefore, that the jury was entitled to know all pertinent facts which led up to and influenced the assault. This was material on the question of motive.

■ Justice Bouldin, writing for the Supreme Court in Brothers v. State, 236 Ala. 448, 183 So. 433, 435, made this pertinent observation: "The motive for the

killing is always a proper subject of proof. In the case of husband and wife the normal relation of affection and lack of motive may be shown to have given place to anger, hate, resentment and jealousy, evidenced by words and conduct such as disclosed by the evidence in question."

See also, Fowler v. State, 155 Ala. 21, 45 So. 913; Reeves v. State, 201 Ala. 45, 77 So. 339; Grooms v. State, 228 Ala. 133, 152 So. 455; Blue v. State, 246 Ala. 73, 19 So.2d 11.

 It is fitting to note also that we are here reviewing a case in which a plea of not guilty by reason of insanity was interposed. Therefore it was permissible that the evidence take a very wide range. This was pointed out by Justice Bouldin in the Brothers case, supra. .

 It is cogently urged that the trial court fell into error by allowing some lay witnesses to testify that in their opinion the defendant was sane at the time of the alleged offense. This testimony was, of course, tendered by the State in rebuttal of evidence tending to establish the insanity of the accused. The position is posed that the State's witnesses had not had sufficient acquaintance with or observation of the appellant and therefore were not qualified to testify as to the sanity of the defendant.

"As to whether or not a witness possesses such acquaintance with and knowledge of defendant as to be qualified to give his opinion as to his sanity is a question to be determined by the trial court, and, as said in Jones v. State, 181 Ala. 63, 61 So. 434, 'The very nature of the test requires that its determination in particular cases be left to the sound discretion of the trial court, * * * which will not be revised on appeal, except for palpable abuse.' No precise rule can be established as to the length or character of acquaintance necessary for qualification." Bass v. State, 219 Ala. 282, 122 So. 45, 48. See also, Oliver v. State, 232 Ala. 5, 166 So. 615; Gast v. State, 232 Ala. 307, 167 So. 554.

We have given due consideration to the record in its disclosure of the qualifications of the witnesses about whom complaint is made. We would do serious violence to the rules appertaining if we should hold that the trial court abused his discretion in allowing these witnesses to give as their opinion that the accused was sane at the time in question. Our view finds support in the following authorities. Kilpatrick v. State, 213 Ala. 358, 104 So. 656; Birchfield v. State, 217 Ala. 225, 115 So. 297; Harris v. State, 8 Ala.App. 33, 62 So. 477; Turner v. State, 15 Ala.App. 19, 72 So. 574; Hembree v. State, 20 Ala.App. 181, 101 So. 221; Guinn v. State, 22 Ala.App. 331, 115 So. 417.

The cases of Langston v. State, 16 Ala. App. 123, 75 So. 715, and McKinney v. State, 25 Ala.App. 64, 141 So. 705, are cited as authorities for appellant's position.

In the Langston case, it appears that the plea of insanity was not interposed. In the McKinney case, effort was made to prove that the prosecutrix was "weak minded."

We come now to review the written instructions which were refused to appellant.

Several of these were general affirmative charges. The propriety of their denial cannot be seriously questioned. The delineation of the tendencies of the evidence clearly evinces this fact.

 Charges numbered A 1, C 1, 19, 30, 31, and 32 were substantially covered by either the oral charge or given written instructions. Title 7, Sec. 273, Code 1940.

In reply brief, counsel for appellant again urges that it was error to refuse charge 19. In deference to this insistence, we will illustrate that this charge was in fact substantially covered. In his oral charge the court said in part: "I am going to read it again to get it thoroughly in your minds: To sustain the defense of insanity, the defendant must establish by the evidence that at the time of the commission of the crime he was afflicted with a diseased mind to the extent that he did not know right from wrong as applied to the particular act in question, or that if he did have such knowledge, he nevertheless by reason of the duress of such mental disease had so far lost the power to select the right and avoid doing the act in question, as that his free agency was at the time destroyed, and that at the same time the

crime was so connected with such mental disease in the relation of cause and effect as to have been the product of it solely."

■ Refused charge numbered B 1 does not predicate or premise defendant's knowledge of right from wrong on the particular act in question. Parsons v. State, 81 Ala. 577, 2 So. 854.

■ Charge 12 was approved in Smith v. State, 86 Ala. 28, 5 So. 478, and disapproved by this court in Dickey v. State, 15 Ala.App. 135, 72 So. 608.

It is evident for the instruction to be applicable and not abstract there must be a sufficient provocation to excite sudden passion and the defendant must fire the fatal shot or strike the fatal blow under the impelling influence of such passion.

A review of the tendencies of the evidence which we have set out will clearly illustrate that under no phase of the testimony can it be said that there was an immediate sufficient provocation to excite sudden passion upon which a presumption could arise that the reason of the appellant was so disturbed that he became regardless of his act.

In our view the approval of the charge in question must be related to or dependent upon a state of facts or circumstances in which the provocation amounts to either personal violence or threatened acts evincing a purpose or intention to resort to immediate force. Of course, the provocation must be sufficient and the inflicted blow must be the unpremeditated result of the aroused sudden passion.

In effect, this court reached a similar conclusion in Collins v. State, 21 Ala.App. 152, 106 So. 341.

The same criticism is directed to charge 14.

■ Refused charge numbered 18 contains the word "consideration" where the word "cause" was evidently intended. We are justified in condemning it for this reason. McWhorter v. Bluthenthal & Bickart, 136 Ala. 568, 33 So. 552, 96 Am.St. Rep. 43; Louisville & N. R. Co. v. Lile, 154 Ala. 556, 45 So. 699; Badger et al. v. Hollon, 27 Ala.App. 534, 175 So. 700; Title 7, Sec. 273, Code 1940.

■ This aside, the charge was approved in Mizell v. State, 184 Ala. 16, 63 So. 1000. We had this identical charge with the correct word used in Brown v. State, Ala.App., 31 So.2d 670. The original record in the Brown case includes the charge, and it is there numbered A–6. On the authority of the Mizell case, we held that the instruction should have been given. On certiorari the Supreme Court entertained the view that because it embraces a parenthetical statement its refusal did not constitute reversible error. Brown v. State, 249 Ala. 5, 31 So.2d 681.

■ The refusal of charge number 20 does not constitute error. It is not predicated on the evidence in the case. Rikard v. State, 209 Ala. 480, 96 So. 412; Edwards v. State, 205 Ala. 160, 87 So. 179.

■ Counsel is mistaken when he states in brief that charge 27 is an exact copy of charge 17 which was refused in McLeroy v. State, 120 Ala. 274, 25 So. 247, and error was predicated on its refusal. Charge 27 in the instant case is a duplicate of number 18 in the McLeroy case. The confusion is due to error in numbering the refused charges in the Southern Reporter. According to the original record, which we have examined, the review of the charge is accurately and correctly presented in the opinion which is recorded in the Alabama Report. There it is held that the charge is covered by other written instructions. This is also true in the case at bar.

We think also that the charge is due to be criticized for its argumentative tendencies. Trial courts should avoid giving charges which have the effect of giving undue prominence to particular facts, or which instruct the jury that there is or is not evidence of particular facts. Griffin v. State, 165 Ala. 29, 50 So. 962; Pollard v. Williams, 238 Ala. 391, 191 So. 225; Watts v. State, 8 Ala.App. 264, 63 So. 18; Chappell v. State, 15 Ala.App. 227, 73 So. 134.

It is cogently urged that we should disturb the action of the court below by holding that he was in error in denying the motion for a new trial. The primary insistence is that on the question of insanity vel non the preponderance of the evidence

is against the verdict of the jury. It is contended that the hazardous and trying experiences of the accused, incident to his imprisonment while in the Army service, brought about a mental disorder and derangement.

Appellate courts are enjoined to move with care and caution before disturbing the action of a trial court in overruling a motion for a new trial on the grounds that the verdict is contrary to the evidence. It is true that the expert testimony tended strongly to establish the appellant's plea of insanity. It should be noted, however, that the examination of the accused by Dr. Ingram was made at a time subsequent to the assault. The jury and court were privileged to weigh this evidence in the light of this fact.

Our consideration of this matter brings us to a position comparable to that of the Supreme Court in Booth v. State, 247 Ala. 600, 25 So.2d 427, 432. There Chief Justice Gardner observed: "Among the grounds of motion for a new trial was the one that the verdict was contrary to the great preponderance of the evidence. The motion was denied. The solution of the questions of fact presented in this case was one not free from difficulty, but was one peculiarly for the jury's determination. The trial appears to have been conducted with great care. The defendant was vigorously represented by able counsel who was alert to his every interest, and the trial judge likewise appeared to have conducted the trial in such a manner as to safeguard defendant's every right. Under the rule by which we are here guided, there is no justification for a disturbance of the trial court's action in denying the motion for a new trial based upon this ground."

See also, Cobb v. Malone, 92 Ala. 630, 9 So. 738; Smith v. State, 23 Ala.App. 488, 128 So. 358; Locklear v. State, 17 Ala.App. 597, 87 So. 708; Summers v. State, 32 Ala. App. 657, 29 So.2d 431.

The questions we have omitted to treat relate to matters which are elementary in nature, and a discussion of them could serve no good purpose.

The judgment of the court below is ordered affirmed.

Affirmed.

## On Rehearing.

On application for rehearing counsel states in brief: "I was of the opinion that the Supreme Court was the final judge on such matters and that the Court of Appeals had to follow more or less what the Supreme Court rules * * *."

In preparing our original opinion we did not lose sight of our obedience to the authorities of the Supreme Court, and the opinion is not susceptible of a contrary view.

Counsel's criticism is based on the conclusion we reached that appellant's written charge number 12 was properly refused. We did not overlook the holding in Smith v. State, 86 Ala. 28, 5 So. 478, 479. The charge in the Smith case was approved in consonance with the facts there appearing. The court observed: "That (testimony) of the accused, in addition to another grave provocation, tended to show that he acted only in prevention or defense of a *very dangerous assault about to be committed on him by the defendant.*" (Emphasis ours.)

As we pointed out in the original opinion, as applied to the facts in the case at bar the charge was abstract and without application. Therefore, the holding in the Smith case is not influencing nor controlling.

To respond to the other urgencies made in the application for rehearing would be in effect a repetition of the views set out in the original opinion.

The application for rehearing is overruled.